JACKSON CONSTRUCTION CO., JESSEP CORP., MONJIER CORP., AND JEFFERSON CONSTRUCTION CO., ALL CORPORATIONS OF THE STATE OF NEW JERSEY, PLAINTIFFS, v. TOWN-SHIP OF OCEAN, A MUNICIPAL CORPORATION OF THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, DE-FENDANT.

Tax Court of New Jersey

August 25, 1981.

150

*W. Peter Ragan* for plaintiffs (*Blankenhorn & Ragan*, attorneys).

*Dennis Crawford* for defendant (*Schaefer, Crawford & Hirsch*, attorneys).

ANDREW, J. T. C.

Pursuant to *R.* 4:50–1 plaintiffs move for an order vacating judgments of dismissal entered by the Clerk of the Tax Court on May 2, 1980.

This local property tax proceeding originally involved the issue of the proper valuation and assessment of vacant land for the tax year 1975. There are approximately 300 separately assessed parcels of land which, pursuant to the pretrial order, had been consolidated for trial.

The pretrial order was entered in this matter on January 4, 1980. It required that appraisal reports and lists of comparable sales be exchanged by the parties no later than January 18, 1980 and provided further that the case would be heard during the trial week of February 11, 1980. At plaintiffs' request the matter was adjourned for one month and a firm trial date of March 19, 1980 was set by the court.

Counsel for both parties appeared in court on March 19, 1980. Counsel for defendant Ocean Township, accompanied by his appraiser and the taxing district assessor, was prepared to proceed. The court was advised by taxpayers' counsel that the appraisal expert retained by plaintiffs was not in court and was not expected to appear. Taxpayers' counsel revealed that the expert's absence was due to a dispute between the expert and the principal of the corporate plaintiffs regarding the expert's compensation. In answer to the judge's question, counsel for plaintiffs indicated that the dispute would not likely be resolved. He could not represent to the court that plaintiffs were, or would soon be, prepared to proceed with the trial of the matter. As such, he did not even advance an application for an adjournment.

The judge thereupon granted defendant's motion to dismiss the complaints for lack of prosecution. The judgments of dismissal were entered by the Clerk of the Tax Court on May 2, 1980.

The record reveals that on October 29, 1980 a substitution of attorney form was executed and plaintiffs' present counsel were retained.

Plaintiffs now seek vacation of the judgments of dismissal pursuant to *R.* 4:50–1, which provides in part:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence . . .; (c) fraud . . ., misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged . . .; or (f) any other reason justifying relief from the operation of the judgment or order.

A motion under *R.* 4:50–1 must be made within "a reasonable time," and for reasons (a), (b) and (c) therein not more than one year after the entry of judgment. *R.* 4:50–2. Plaintiffs rely on reasons (a), "surprise," and (f), the catchall category, of *R.* 4:50–1. Plaintiffs state that if the dismissal judgments are not vacated, they will be forever barred by the statute of limitations from prosecuting these claims. See *N.J.S.A.* 2A:3A–4.1(b).

The motion was filed on January 22, 1981, about ten months after the granting of the motion to dismiss and about nine months after the entry of judgment.

■ Although plaintiffs have advanced subsection (f) of *R.* 4:50–1 ("any other reason justifying relief from the operation of the judgment") their primary thrust has been the surprise which emanated from their expert's failure to appear. No other reasons have been urged which would justify the requested relief. The sheer fact that the statute of limitations would bar the filing of another complaint does not in and of itself justify the vacation of a judgment. *Miller v. Estate of Kahn,* 140 *N.J.Super.* 177, 182 (App.Div.1976).

On the return date of the motion, after having considered the affidavits and briefs submitted and hearing oral argument, this court was not satisfied that it could make a determination on the proofs adduced. Therefore, the court carried the motion to another date, at which time the parties could present additional proofs, particularly the testimony of the principal for the taxpayers and the taxpayers' appraisal expert. *See Allegro v. Afton Village Corp.*, 9 *N.J.* 156, 161 (1952).

At the continued date and time plaintiffs presented the testimony of Jerome Epstein, vice-president and secretary of plaintiffs' corporations. It was Epstein, in his official capacity for plaintiffs, who retained the expert, Paul J. Kiernan, and conducted all business with him regarding these tax matters. The salient points of Epstein's testimony indicate that he had retained Kenneth L. Walker, Jr., as an expert to provide the necessary appraisal reports and testimony for an appeal of the subject lots to the Monmouth County Board of Taxation for the tax year 1975. Just prior to the hearing date before the county board Walker notified Epstein that he could neither complete the necessary appraisals nor be prepared to testify before the county board. Epstein then, in September 1975, retained Kiernan, who agreed to prepare written appraisal reports for each of the subject parcels and to give testimony before the Monmouth County Board of Taxation and, if necessary, the Division of Tax Appeals (now the Tax Court). Epstein indicated that Kiernan had agreed to a total fee of $1,200 which, perhaps coincidentally, happened to be the same fee that Walker had originally agreed to accept. Kiernan did prepare appraisal reports and give oral testimony before the county tax board on October 6, 1975.

On October 15, 1975 Kiernan sent a bill to Epstein for services rendered in the amount of $4,000. Epstein testified that he contacted Kiernan about the bill shortly after it was received and that Kiernan suggested a compromise figure of $2,800, which would also cover testimony to be given to the Division of Tax Appeals. Epstein indicated that he refused this. Thereafter the county board affirmed the original assessments as to each

parcel and timely appeals were filed to the Division of Tax Appeals.

Epstein further indicated that during the 4½-year period from October 15, 1975 to February 26, 1980 he received up-datings of the original bill sent to him by Kiernan, each reflecting a demanded fee of $4,000. Epstein called Kiernan to attempt to resolve the question of the fee. It was Epstein's testimony that at one time there was a discussion of a fee of $2,800, while at another time there was discussion of a $3,000 fee and yet another discussion with regard to a $2,500 fee.

As previously indicated, a firm trial date was set for March 19, 1980. In February 1980, with the hearing date approaching, Epstein contacted Kiernan. Epstein testified that Kiernan now required a $3,000 payment for all services previously rendered and those still to be provided. Epstein indicated that he could not come to an agreement with Kiernan. Thereafter, he asked his then attorney to intercede with Kiernan and, according to the testimony of Epstein, his attorney indicated that he had resolved the fee dispute with Kiernan for the sum of $2,500. Epstein then stated that on the afternoon of March 17, 1980, two days before the hearing, he learned from his then attorney that Kiernan refused to appear at the hearing unless he received a total fee, in advance, of $3,000. Epstein testified that he was not able to reach Kiernan by telephone until 7:45 a.m. on March 19, 1980, when he advised Kiernan that he would pay a fee of $3,000. However, he stated he was told by Kiernan that he, Kiernan, could not appear in court that morning because he had another commitment which he deemed more important. That same morning Epstein contacted his then attorney to relate that he had agreed to pay Kiernan's fee, that Kiernan had agreed to testify and that an adjournment should be obtained in order to permit Kiernan sufficient time to make arrangements to appear in court.

The dismissal of the appeals followed as a result of Kiernan's absence at the hearing and plaintiffs' inability to proceed with

the case. Plaintiffs assert that under these circumstances, *i. e.,* the abrupt and unexpected refusal of their expert to appear, through, they maintain, no fault of their own, the reopening of these matters is merited.

Defendant presented the testimony of Kiernan. Kiernan indicated that he was contacted by Epstein in September 1975 to see if Kiernan could obtain a new date for plaintiffs before the county board (their originally scheduled date had passed without an appearance by plaintiffs). It was Kiernan's function to obtain a new date and, if successful, to prepare appraisals and testify before the county board. Kiernan testified that he did not set a fee initially because he felt it was an enormous undertaking and he had little idea of how many hours it would take to accomplish. Therefore, he could not estimate a fee but advised Epstein that he would keep it reasonable. Kiernan was successful in obtaining a new date and did, in fact, prepare the appraisals and testify before the county board on October 6, 1975. However, since Kiernan was not optimistic as to a successful result at the county board level, he indicated to Epstein that appeals to the State Division of Tax Appeals would probably be necessary and that he would provide expert testimony before the Division without further fee. Kiernan stated that he sent his original billing for $4,000 to Epstein on October 15, 1975 and repeated the billing on December 1, 1977, March 15, 1978, November 30, 1979 and February 26, 1980. Kiernan indicated that although he had a number of discussions with Epstein regarding his fee, he never agreed to accept less than $4,000 at any time. It was Kiernan's testimony that he had made it perfectly clear to Epstein and to plaintiffs' attorneys that he would not appear to testify before the Tax Court unless he was previously paid in full. As can readily be seen, the credibility of the witnesses is squarely in issue.

At the outset it should be noted that a motion for vacation of a judgment under *R.* 4:50–1 is addressed to the sound discretion of the trial court, guided by equitable princi-

ples, whose decision will not be disturbed unless it results from a clear abuse of discretion. *Greenberg v. Owens*, 31 *N.J.* 402, 405 (1960); *Hodgson v. Applegate*, 31 *N.J.* 29, 37 (1959). The rule is designed to afford a remedy in the rare situation in which for some equitable reason a judgment or order pronounced by a competent court should not be enforced. *Greenberg v. Owens, supra* 31 *N.J.* at 405. It is also meant to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case. *Manning Engineering, Inc. v. Hudson Cty. Park Comm'n*, 74 *N.J.* 113, 120 (1977).

An application to set aside a default judgment, which is involved here, is "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." *Marder v. Realty Constr. Co.*, 84 *N.J.Super.* 313, 319 (App.Div.1964), aff'd 43 *N.J.* 508 (1964). The power to vacate a default judgment should be freely exercised when the enforcement of the judgment would be unjust, oppressive or inequitable to the party moving to vacate it. *Tradesmens Nat'l Bank & Trust Co. v. Cummings*, 38 *N.J.Super.* 1, 4 (App.Div. 1955). However, a plaintiff seeking to reopen a default judgment must show that the failure to prosecute his claim was justified under the circumstances and that the claim is meritorious. *See Ballurio v. Campanaro*, 30 *N.J.Super.* 548, 550, 552 (App.Div.1954); *Marder v. Realty Constr. Co., supra* 84 *N.J.Super.* at 318.

Bearing these principles in mind, the issues involved in this motion can be narrowly defined. The first is whether plaintiffs were in fact *surprised* by the failure of their expert appraiser to appear in court on the scheduled hearing date of March 19, 1980. The second issue is whether the motion to vacate was made within a reasonable time. *R.* 4:50–2.

Plaintiffs cite several cases in which dismissal of an action for nonappearance of an expert or attorney was held to be improper. It should be noted that the cases cited did not arise under

vacation motions pursuant to *R.* 4:50–1 but were decisions on appeals taken from a trial court's judgment of dismissal following a denial of a request for an adjournment.

In *Allegro v. Afton Village Corp.*, 9 *N.J.* 156 (1952), the plaintiff appeared in court on the trial date without his attorney, who had just recently withdrawn from the case. Plaintiff agreed to pay costs to defendant for the loss suffered by the delay and was granted an adjournment of three weeks. A new attorney was retained, but he was unable to appear on the adjourned trial date because of prior trial commitments. The judge then dismissed the complaint for lack of prosecution. An appeal was taken to the Appellate Division and before it came on for hearing it was certified by the Supreme Court on its own motion.

The Supreme Court held the dismissal improper under the circumstances and ordered a new trial, contingent upon payment by plaintiff of defendant's reasonable costs of preparation for the second trial date. The court reasoned as follows:

> The dismissal of a party's cause of action is drastic punishment and should not be invoked except in those cases where the actions of the party show a deliberate and contumacious disregard of the court's authority. The testimony of the plaintiff [on the adjourned trial date] should have been taken to determine whether or not the course of conduct of the plaintiff was so deliberately careless as to call for the drastic action taken by the court. It seems to us that the plaintiff's conduct here did not warrant such severe punishment, particularly in view of the fact that the defendant would have suffered no loss by a further short adjournment which very well might have been granted on terms.
>
> It is peculiarly within the sound discretion of the trial court to deal with problems of this sort, and an appellate court should not interfere unless it appears an injustice has been done. But courts exist for the sole purpose of rendering justice between parties according to law. While the expedition of business and the full utilization of their time is highly to be desired, the duty of administering justice in each individual case must not be lost sight of as their paramount objective. [at 160–61; citations omitted].

In *Steiginga v. Thron*, 30 *N.J.Super.* 423 (App.Div.1954), a medical malpractice action, plaintiffs' expert witness, a physician, decided not to testify just two days before the trial. Because plaintiffs could not proceed at trial, the trial judge dismissed their complaint. The Appellate Division reversed,

finding that the plaintiffs' failure to be ready for trial did not constitute a "deliberate and contumacious disregard of the court's authority," citing *Allegro v. Afton Village Corp., supra*. Plaintiffs herein assert that the instant matter is on all fours with *Steiginga*.

In *Nadel v. Bergamo*, 160 *N.J.Super.* 213 (App.Div.1978), another medical malpractice action, plaintiff's expert witness died during the pendency of the case. The trial judge gave plaintiff 18 days within which to obtain another medical expert and submit all reports. When she failed to meet this deadline, the judge granted defendant's motion to bar plaintiff from producing an expert or any new expert's reports at trial, and soon thereafter granted defendant's motion for summary judgment.

The appellate court reversed the summary judgment, vacated all prior orders, and remanded the case with a revised and extended discovery schedule. The court found that the judge had failed to grant a reasonable extension of discovery time following the death of plaintiff's expert witness and his enforcement of an order limiting plaintiff's proof effectively deprived her of her day in court.

Plaintiffs also cite *Escoett v. Aldecress Country Club*, 26 *N.J.* 160 (1958), in which the trial judge dismissed the complaint for lack of prosecution about 7½ months after plaintiff's counsel withdrew. In the interim plaintiff was unable to retain new counsel, possibly due in part to a substantial indebtedness to his accountants and original counsel. The Supreme Court noted that the plaintiff had been derelict in the prosecution of his action, but was constrained to affirm the Appellate Division's reversal of the dismissal in light of the efforts plaintiff had made to obtain new counsel and the sums he had already expended.

I do not find these cases to be persuasive of plaintiffs' contention in this case. Initially I find that plaintiffs' representative, Jerome Epstein, was not in fact surprised by the

conduct of Kiernan on March 19, 1980. I have observed the witnesses, Kiernan and Epstein, and weighed the testimony and find the testimony of Kiernan to be more credible. I find the following facts based on the record.

Kiernan was retained by Epstein to seek a reinstatement of a hearing date before the county board. If Kiernan was successful, as he was, his function was to prepare appraisals and give testimony before the county board, which he did. There was no specific fee arrangement at that time. Epstein relied on Kiernan's representation that the fee would be reasonable. Kiernan determined that the services performed and to be performed demanded a fee of $4,000. Kiernan did not change this fee requirement even though Epstein sought to negotiate the amount on numerous occasions.

Kiernan had made it perfectly clear to Epstein that he would not testify before the Tax Court unless he was paid, and Epstein understood this to be so. Kiernan never indicated to anyone in the office of plaintiffs' attorney that he would appear or that a sum less than $4,000 would be satisfactory to him. I do not believe that any one of plaintiffs' attorneys did in fact tell Epstein that Kiernan had agreed to appear on March 19, 1980 for the sum of $2,500. Epstein, during the period of October 15, 1975 through March 19, 1980, attempted unsuccessfully to negotiate Kiernan's fee downward. Epstein knew full well that Kiernan would not appear without payment, yet he continued to jeopardize the status of the pending matters by seeking to negotiate right up to the morning of the scheduled trial. The dispute went on for 4½ years and Epstein had ample time to either resolve it or obtain another expert. He did neither.

These conclusions are supported by the fact that plaintiffs' attorney, on March 19, 1980, explained in open court that Epstein and Kiernan were unable to agree on Kiernan's compensation for the preparation of an appraisal report and his county board and court appearances. The attorney further indicated that a resolution of the dispute was unlikely and therefore he

was not prepared to proceed with the hearing, nor would he be so prepared in the near future. The fact that a request for an adjournment was not made belies Epstein's assertions that he had come to an agreement with Kiernan on the morning of the hearing and that he had instructed his attorney to seek a postponement. The lack of any corroboration of Epstein's testimony by his previous attorneys places the testimony further in doubt. Plaintiffs' previous counsel refused to provide any information unless Epstein agreed to waive the attorney-client privilege, which he declined to do. I find that the failure of Kiernan to appear was due exclusively to the fault of Epstein. Kiernan's refusal to appear was not and should not have been unexpected. His nonappearance was clearly justified under the circumstances.

I find, therefore, that Epstein was not in fact surprised by Kiernan's nonappearance. Were the circumstances different the cases cited by plaintiffs might have merit in this proceeding. However, in each of those cases there was no dispute as to the facts, or as to the inability of the moving party to secure either an expert or an attorney by stated deadlines. In each the moving party sought an adjournment for a reasonable time to secure other counsel or expert witnesses. Here, if surprise had been urged on the morning of the trial, a request for an adjournment might have been favorably received. In fact, the judge sought clarification as to whether the fee dispute might be resolved in the reasonably near future, but plaintiffs' counsel was unable to make an affirmative representation to that effect, hence the judge had no alternative but to grant defendant's motion to dismiss.

In these circumstances responsibility for the judgments entered rests entirely with Epstein. He demonstrated an utter lack of regard for plaintiffs' case and the orderly conduct of judicial business. Any prejudice that results from a denial of this motion is attributable to factors which were within Epstein's control. He did not act as a reasonable and prudent person would have acted in the circumstances in anticipating

that Kiernan would eventually come around to his way of thinking. It is eminently clear that plaintiffs have failed to establish surprise and therefore are not entitled to the relief requested. *See Ballurio v. Campanaro, supra.*

While a determination that surprise did not in fact occur is dispositive of this motion, attention should be given to the question of whether the application was timely filed.

Defendant's principal contention was that the motion was out of time pursuant to *R.* 8:10, which originally provided:

The provisions of *R.* 4:49–1 and *R.* 4:49–2 (Motion for New Trial and Motion to Alter or Amend a Judgment) and *R. 4:50 (Relief from Judgment or Order)* shall apply to Tax Court matters except that all such motions shall be filed and served not later than 20 days after entry of the judgment or order. [Emphasis supplied]

Since plaintiffs' application was not made within the 20-day period after entry of judgment, defendant urges that the motion is not timely and must be denied. However, this rule was amended, effective July 15, 1980, to delete the reference to *R.* 4:50. This was accomplished because it was not the intention of the rulemakers that the time period to apply under *R.* 4:50 be limited to 20 days. See "Revisions of Tax Court Rule Modifications" and "Comments on Proposed Rule Changes" (June 18, 1980).

■ Even though defendant is technically correct that plaintiffs' application should have been made within 20 days pursuant to the rule in effect at the pertinent time, the court considers a relaxation of this rule pursuant to *R.* 1:1–2 appropriate in light of the subsequent amendment and to avoid injustice. This does not mean, however, that the filing was timely.

■ *R.* 4:50–2 requires that a motion to set aside a judgment be made within a reasonable time and, for the reason asserted by plaintiffs, not more than one year after judgment. The fact that the motion was filed within one year after entry of judgment does not make it timely. A determination of whether an application has been submitted within a reasonable

time requires an analysis of all relevant facts and rests in the sound discretion of a trial court, with guidance provided by known equitable principles. *Garza v. Paone*, 44 *N.J.Super.* 553, 557–558 (App.Div.1957).

As stated, the present application was made about ten months after the scheduled trial date and about nine months after the entry of judgment. During this time plaintiffs indicated that they tried to negotiate with Kiernan, again to no avail since Kiernan insisted on a fee of $4,000 which plaintiffs were unwilling to pay.

Plaintiffs then sought other counsel and indicated that there was difficulty in finding counsel who would undertake their representation in this matter. Epstein indicated that he had spoken to four attorneys before he succeeded in obtaining counsel sometime in October 1980, seven months after the trial date. I find that the period of seven months demonstrates that Epstein did not move with reasonable promptitude in consideration of the consequences. If a request for an adjournment had been made due to lack of counsel on March 19, 1980, clearly the judge would not have granted an adjournment for seven months. I find this time period unreasonable. Added to this is the fact that after counsel was obtained in October 1980 the motion to vacate was not filed until January 1981, about three months later.

I think it clear that plaintiffs moved at their own convenience. The requirement that parties must move for relief within a reasonable time is an expression of the policy that the termination of litigation within a reasonable time is essential to the proper administration of justice. *Naglieri v. Trabattoni*, 14 *N.J.Super.* 54, 57 (App.Div.1951); *Garza v. Paone, supra* 44 *N.J.Super.* at 558. Plaintiffs' conduct shows indifference to this policy.

In spite of the liberal policy toward the reopening of judgments entered for lack of prosecution and a reluctance to dismiss a cause when there are alternative solutions, I find that

the circumstances of this matter clearly dictate a denial of the motion as being the only course consistent with the orderly administration of justice.[1]

---

[1] I have not overlooked the fact that the moving papers do not include the required statement that plaintiffs have a meritorious claim. *See Ballurio v. Campanaro, supra* 30 *N.J.Super.* at 552. In view of the foregoing this point need not be considered. It is noteworthy in this regard that as of April 30, 1981 (13 months after the scheduled hearing date of March 19, 1980) Epstein has not obtained nor attempted to obtain (nor even broached the subject with an expert) the services of another expert, preferring to await the outcome of this motion.