JAMES WAIT, PLAINTIFF IN CERTIORARI, v. ISAAC H. KREWSON, DEFENDANT IN CERTIORARI.

1. An application for an adjournment on account of the absence of a material witness is addressed to the discretion of the trial court. A judgment of the Court of Common Pleas, on the trial of an appeal, will not be reversed for the refusal of an adjournment, unless it be made to appear that injustice has been done by such refusal.

2. Books of account are not competent evidence of damages arising from breaches of covenants and agreements contained in a lease. Nor are such books competent evidence of the damages sustained by the wrongful taking of personal property.

3. The rules of practice and procedure relating to bills of exceptions that control on writs of error do not apply to *certiorari* on proceedings in suits under the Justice's Court act. This court, on *certiorari,* will not retry the case upon the merits, but will examine the record to see whether the trial of the suit has not been so conducted as to do injustice.

4. The court in its discretion may permit a case to be opened for the admission of additional testimony, or the jury may be permitted to return into court or be called back for further instructions or for information as to the evidence that has been regularly put in during the trial. But to permit the introduction of material evidence on a new subject after the case has been closed and submitted to the jury, is erroneous.

On *certiorari* to the Court of Common Pleas of Middlesex.

Argued at February Term, 1896, before Justices DEPUE, VAN SYCKEL and GUMMERE.

For the plaintiff in *certiorari, James Parker.*

*Contra, Theodore Strong.*

The opinion of the court was delivered by

DEPUE, J.   This suit was brought originally before a jus-
tice of the peace, and appealed to the Court of Common
Pleas, and resulted in a judgment in favor of the plaintiff on
the verdict of a jury.   Whereupon, the defendant sued out a
writ of *certiorari.*

The reasons relied on for a reversal of this judgment are:

*First.* That the court refused to postpone the trial on ac-
count of the absence of a material witness for the defendant.

The case was regularly set down for trial on the 3d day of
May, 1894.   The defendant, who is the plaintiff in *certiorari,*
appeared by counsel.   The defendant's counsel applied for an
adjournment on account of the absence of Isaac C. Acken, a
material witness for the defendant, in consequence of sickness.
He laid before the court an affidavit made by the defendant,
setting out facts showing the materiality of the testimony of
the witness, and stating that the witness was confined to his
home and in bed by reason of his illness, and also the certifi-
cate of a physician that the witness was suffering from the
effects of a recent illness, and incapacitated thereby from
going to New Brunswick and giving evidence.   The court
refused to postpone the trial, and the jury was sworn.   The
defendant's counsel then asked that the jury stand over for
one week for the trial of the cause.   This motion was denied,
and the case was tried in the absence of the defendant and his
witnesses, and resulted in a verdict for the plaintiff for $148.15.
The defendant's counsel then applied for a rule to show cause
why a new trial should not be granted.   This application was
adjourned from time to time until May 14th, 1894, and was
then argued and extended until the condition of the witness
Acken would permit him to give his testimony before a
master.   The testimony of the witness not having been taken,
the plaintiff's attorney, on the 29th of August, took a rule
upon the defendant to close his testimony by the 10th of Sep-
tember following.   This rule was served on the defendant's
attorney, and not having been followed up by taking the testi-
mony, the rule to show cause was discharged, with leave for
the plaintiff to proceed and collect his judgment.

The application for adjournment on account of the absence of a material witness is addressed to the discretion of the court, and the discretion of the trial court will not be interfered with unless it be made to appear that injustice was done. *Ogden* v. *Gibbons*, 2 *South.* 518, 531. As was said by Mr. Justice Southard in the case just cited: " The inquiry in all cases is whether injustice has been done. Has the party been injured ? If- he has not, no good reason can be given why he should receive the favor of trying his case over again." The rule entered the 14th of May was made by consent. It indicated the purpose of the court to grant a new trial if Acken's testimony should be material for the defendant. His testimony was not taken, although there was opportunity to take it for nearly four months. No explanation has been given of the defendant's failure to take this testimony. There was laches in the failure to follow up this rule, and it must be assumed at this time that Acken could not give any testimony material to the defendant's case.

*Second.* That the court denied the motion of the defendant's counsel that the jury be directed to find a verdict for the defendant.

It appears that by a lease, under seal, executed by both of the parties, Wait leased his farm to Krewson for the term of one year and three months, viz., from January 1st, 1892, to April 1st, 1893, to be farmed by him on shares. The plaintiff's suit is upon a book account. The lease was in evidence before the justice, and is sent up by the Pleas as part of the record of that court. For damages arising upon breaches of covenants and agreements contained in the lease, the suit should have been upon the lease. The plaintiff's state of demand sets out simply items of book account, but it appears on the face of the demand that part of the items in the account are such as are referable to the defendant's failure to comply with the terms of the lease. The only evidence touching these items was the plaintiff's books of account and his testimony that they were his original books of entries. The remedy for a breach of covenant involves two propositions—

the fact that the covenant was broken and damages resulting therefrom. Of these facts, books of account are not competent evidence. *Swing* v. *Sparks,* 2 *Halst.* 59, 61.

The testimony at the trial was quite meagre. It consisted entirely in the production of two books, purporting to be books of account, and the testimony of the plaintiff. The plaintiff's testimony was confined to proof that the books produced were the books of original entry in which he put the items down as they were transacted. The plaintiff then rested and the defendant's counsel moved the court to direct a verdict for the defendant, on the ground that the plaintiff had not shown any contract between him and the defendant; that he simply showed a book account, without showing what the account arose on or what the subject-matter of it was. The plaintiff was then recalled, and being asked by the court on what the account arose, testified that some of it was for milk and for a horse that defendant took away, and for two shoats that belonged to him that defendant took out of the place.

"Q. You charged him for these? A. Yes, sir. Q. It was your property? A. Yes, sir. Q. And that is what your account is made up from? A. Yes, sir; and the balance he owed me from the 16th of February."

The charge of February 16th, 1893, appears in the plaintiff's statement of demand as follows:

"Feb. 16, Mr. Wait gave me a due-bill to the amount of $25.92 in settlement."

The shoats and horse are charged as follows:

"I claim the sum of $20.00 for two shoats he valued at $20.00. Mr. Wait took the horses away from me March 10, which I claim damage of $30."

Of these three items the books of account were not competent evidence. They amount to $75.92. The charges after February 16th consist of several items, in the aggregate amounting to $16.50. In what manner these items arose does not appear. After the examination of the plaintiff was concluded, the counsel of the defendant renewed his motion

for a direction that the jury find for the defendant, which motion was denied and an exception taken. The court then charged the jury as follows:

"You take the books of account and the statement of account that is filed here and go over them and see if they are all correct, and if they are, the plaintiff is entitled to the amount of his claim, with interest; the amount of the account is $138.70, with interest from March 16th, 1893."

The trial court should have overruled the books of account as proof of the three charges above mentioned. To this the plaintiff's counsel answers that the objection and exception thereon were too large, and therefore unavailing in this suit. The statute relating to bills of exceptions is contained in the Practice act, and the provisions of that act are inapplicable to any proceedings by virtue of the act constituting Courts for the Trial of Small Causes, except the sections relating to variances and amendments of pleadings, which sections are extended to the Court of Common Pleas on appeals. *Gen. Stat.,* p. 2582, § 301. The rules of practice and procedure relating to bills of exceptions that control on writs of error do not apply to *certiorari* on proceedings in suits under the Small Cause act. The court, on *certiorari,* will not retry the case upon the merits, but will examine the record to see whether the trial of the suit has not been so conducted as to do injustice. The remarks of Chief Justice Hornblower, in *Nicholson* v. *Wood,* 3 *Gr.* 463, 464, and the cases collected in the notes to *Gen. Stat., pp.* 1882, 1883, indicate the extent to which this court will review such proceedings on writ of *certiorari.*

The attention of the trial court was called to the insufficiency of the plaintiff's books of account as evidence to sustain his cause of action without proof as to the manner in which the book account arose or what the subject-matter of it was. And the examination of the plaintiff, when recalled and examined by the court on its own motion, disclosed that for the greater part of plaintiff's demand the books of account were not competent evidence; nor did it appear that the items subsequent to February 16th, which amounted to the incon-

siderable sum of $16.50, as compared with the verdict, were such as were susceptible of proof by books of account. The court should have overruled the books as evidence of the three items referred to, and should have required further explanation of the residue of the account, or should have given the direction of a verdict as requested by the defendant's counsel.

*Third.* That after the case had been submitted to the jury under the charge of the court, and the jury had retired to consider their verdict, the court permitted them to return into court and the plaintiff to give further testimony, against the objection of the defendant's counsel. The facts upon which this reason for reversal is based are certified to as follows :·

"The jury then retired, and afterwards sent in a communication to the court. And being recalled from the jury-room, and having resumed their seats in the jury-box : The Court—'Gentlemen of the jury, you have sent me in a communication as follows : "Has the check account in this book any bearing on this case?" What do you mean by the "check account?"' A Juror—'There is an account in that book that is checked off. We would like to know whether that has anything to do with this case.' The Court—'Let me see what it is, so that I can submit it to counsel, and take the testimony of the witness in the matter.' Mr. Hommann (the defendant's counsel)—'I desire to enter a formal objection now, before the witness comes back.' Which objection was overruled and exception taken. The Court—'The jury having asked the question of the court, "Does the check account in this book have any bearing on this case," the witness is recalled in presence of both counsel and asked "What do the checks mean?"' The Witness—'Those are charges as I took them when a settlement was arranged on the 16th day of February.' The Court—'Those are not included in that account?' The Witness—'No, sir.' The Court—'Any other questions that the jury want to ask?' A Juror—'I would like to know whether the molasses and flour and other goods come in that account?' The Witness—'That is what

I owed him for and settled with him for ; I settled with him.'
Mr. Strong—'If there is any account anywhere, we would
not want this man to lose by it.' The Court—'Any ques-
tions, Mr. Hommann?' Mr. Hommann—'No.' The jury
retired, and returned and rendered a verdict for the plaintiff
in the sum of $138.70, with interest to date amounting to
$9.45, making a total of $148.15."

The court, in its discretion, may permit a case to be opened
for the admission of additional testimony at any time before
it is submitted to the jury, or the jury may be permitted to
return into court, or be called back for further instructions or
for information as to the evidence which has been regularly
put in during the trial. But to permit the introduction of
material evidence on a new subject after the case has been
closed and put in the hands of the jury, is erroneous. The
party against which such evidence is introduced is entitled to
the opportunity of meeting it with counter-proof, and also to
the discussion by counsel as to the applicability and effect of
the new case presented. The jury was instructed to find a
verdict on comparison of the books of account and the state-
ment of account filed. The jury found an account on the
books that was "checked off." Whether that account was
of items on the defendant's side does not appear. It may be
inferred from the answer of the witness that such was the case.
But if the account "checked off" was on plaintiff's side of
the account, it would have been material for the jury to con-
sider whether they were not included in the settlement of
February 16th. The account on the books for molasses, flour
and other goods was manifestly for goods for which the plaint-
iff was once indebted to defendant, and on the books appeared
to be due to him. The plaintiff, in this irregular way, was
permitted to testify to the effect that the account "checked
off" had nothing to do with the case, and that he had settled
with the defendant for the goods that by the books appeared
to be due to the defendant. The introduction of this testi-
mony at the stage of the case at which it was admitted, was
erroneous.

It is said, in the first place, that the evidence so given was immaterial. It appears that the jury thought otherwise, for the jury was not prepared to give the plaintiff a verdict for the full amount claimed without the explanation and additional evidence given by him, and which seems to have been material. In the second place, it is contended that the defendant's counsel did not cross-examine. The counsel was in court without his client and his witnesses, and it is not presumed that he was aware of any fact to be brought out by a cross-examination that was pertinent to the case. He promptly objected to the course that was taken, and that was all he was required to do.

The judgment should be reversed.