ROSS ALLEGRO, PLAINTIFF-APPELLANT, v. AFTON VILLAGE CORP., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

Argued February 25, 1952—Decided March 24, 1952.

*Mr. Samuel H. Nelson* argued the cause for the appellant (*Mr. George Kesselhaut,* attorney; *Mr. Irving Mandelbaum,* of counsel).

*Mr. Horace S. Bellfatto* argued the cause for the respondent.

The opinion of the court was delivered by

OLIPHANT, J. The question involved here is, under the circumstances, did the court below exceed its discretion in refusing to grant an adjournment of the trial of the cause?

Plaintiff instituted suit on March 15, 1951, and in his complaint alleged a written agreement entered into with the defendant whereunder he was to do certain work for the defendant in return for a salary plus a percentage of profits. The complaint sought $40,000 in damages for breach of the contract and, in addition, certain equitable relief. The defendant answered denying any breach of the contract and setting up certain separate defenses, and in addition counter-claimed against the plaintiff for substantial amounts.

On June 8, 1951, the cause was pretried and the court directed counsel to prepare trial memorandums, exchange them and file same on or before September 23, 1951. The pretrial order fixed October 2, 1951, as the trial date. No trial memorandum was prepared or filed by the plaintiff.

On October 2, plaintiff appeared in court without counsel, he having withdrawn from the case shortly previous. Plaintiff advised the court he was without counsel, had not had the opportunity to retain other counsel, and requested an adjournment of the trial. This request was complied with on condition that plaintiff pay costs of $200 to reimburse the defendant for the loss suffered by the delay, which sum was paid. October 23 was then fixed as the new trial date and the court said to the plaintiff: "You should get yourself an attorney, a new attorney, and tell him that it will be necessary for him to file a trial memorandum here before October 15th."

Plaintiff contends he had New York counsel who was conversant with the case and who had charge of hiring new local counsel for him, but that he was then in California and did not return until October 10, 1951, when he conferred with him. They immediately endeavored to see and retain a certain member of the bar of this State. He was in West Virginia on a professional matter and did not return to his office in Newark until Saturday, October 20, 1951, on which

day he was retained. He immediately communicated with the defendant's attorney by telephone, advising him that he had been retained by the plaintiff but that it would be impossible for him to try the case on October 23 as he could not properly prepare it, and that he was due to be in the federal court on that day for the start of a trial which might last for several weeks. This telephone call was followed by a letter of the same tenor to the defendant's attorney.

On October 23, 1951, still another local attorney, at the request of the retained attorney, appeared, not to try the case but simply to request an adjournment, and he recited in substance the aforementioned facts. He advised the court that plaintiff's local counsel was actively engaged in the federal court at that time. The application for an adjournment was denied. The attitude of the court was expressed by the following statement it made:

"I think that Mr. Allegro got all the consideration he was entitled to when he was granted the adjournment the last time—when the court lost time and the other side was put to great inconvenience. He was given three further weeks to prepare for today, and it was emphasized to him that the trial would go on today. He has had ample time to get another attorney. It may be that he has not used good judgment in taking the steps to get ready for trial today, but that is his misfortune. He has been under no misapprehension. It was made very clear to him three weeks ago that this case would go on for trial today and that he should move at once to get an attorney. And that means an attorney who would be available to try this case today. This Court cannot arrange its time to fit the convenience of any one litigant."

Counsel then asked leave to take the testimony of the plaintiff and his New York attorney in order to show, in detail, what steps had been taken to engage new counsel after the October 2 adjournment, and the circumstances surrounding that activity. This application was denied, whereupon plaintiff's New York attorney sought an opportunity to address the court, which refused to hear him.

The court then directed the plaintiff to proceed with his case or have it dismissed, but the plaintiff stated he was

incompetent to try his case and that therefore he could not proceed. The court then dismissed his complaint and directed the defendant to proceed on his counterclaim, which the plaintiff did not defend. After hearing the testimony the court awarded damages to the defendant in the sum of $4,700.

From the judgment entered thereon an appeal was taken to the Appellate Division, and before the cause came on for hearing there it was certified on our own motion.

On October 2, the court was dealing with a layman, not an attorney, an officer of the court. It is problematical whether or not he fully appreciated the import of the remarks made to him. However, as soon as possible, on October 10, he did contact his New York attorney and that attorney immediately endeavored to retain the particular local counsel he desired to retain. This he was unable to do until October 20. Plaintiff had a right to rely on his New York attorney to choose local counsel for him. He had a right to local counsel of his own choosing. The dereliction was on the part of his New York counsel and particularly his local attorney. The latter's conduct is to be criticized. Immediately upon being retained he should have advised the court of his predicament and asked for an adjournment, rather than asking defendant's counsel for it. If this had been done the court might have been able to readjust its calendar. Attorneys do not and cannot be allowed to run court calendars to suit their own conveniences. If this was so nothing but chaos in the trial of cases would result. Plaintiff's local counsel caused the difficulty which ensued in this case. He displayed a total disregard for the court's function of calendar control, without which courts cannot efficiently and expeditiously operate and maintain a proper administration of justice. The trial judges are to be commended for their endeavors in expediting litigation and bringing calendar control to its present high state.

The dismissal of a party's cause of action is drastic punishment and should not be invoked except in those cases

where the actions of the party show a deliberate and contumacious disregard of the court's authority. *Lang v. Morgan's Home Equipment Corp.*, 6 *N. J.* 333 (1951). The testimony of the plaintiff and his New York attorney should have been taken to determine whether or not the course of conduct of the plaintiff was so deliberately careless as to call for the drastic action taken by the court. It seems to us that the plaintiff's conduct here did not warrant such severe punishment, particularly in view of the fact that the defendant would have suffered no loss by a further short adjournment which very well might have been granted on terms.

It is peculiarly within the sound discretion of the trial court to deal with problems of this sort. *Heinz v. Atlantic Stages, Inc.*, 113 *N. J. L.* 321 (*E. & A.* 1934), and an appellate court should not interfere unless it appears an injustice has been done. *Wait v. Krewson*, 59 *N. J. L.* 71 (*Sup. Ct.* 1896); *Carlo v. The Okonite-Callender Cable Co.*, 3 *N. J.* 253 (1949); *Koretsky v. Kislak*, 8 *N. J.* 506 (1950). But courts exist for the sole purpose of rendering justice between parties according to law. While the expedition of business and the full utilization of their time is highly to be desired, the duty of administering justice in each individual case must not be lost sight of as their paramount objective. *Pepe v. Urban*, 11 *N. J. Super.* 385 (*App. Div.* 1951).

Without the testimony of the plaintiff and his attorney we are led to the conclusion, on the record before us, that an injustice was done in the striking of the complaint and allowing the defendant to proceed on his counterclaim uncontested. A new trial should be had on terms. If the plaintiff will pay to the defendant its reasonable costs of preparation for trial on October 23, 1951, the judgment appealed from will be reversed and a new trial ordered as to all issues.

VANDERBILT, C. J. (dissenting). The action of the trial court in denying the plaintiff a second adjournment must be considered in the light of all that had previously transpired

in the case. When this is done I do not think that it can properly be said that the trial court abused his discretion.

The plaintiff's action was instituted on March 15, 1951, to recover a share of the profits alleged to have been made by the defendant. The defendant answered and counterclaimed and in April, 1951, submitted to the plaintiff a final verified audit of its financial operations up to and including March 31, 1951. At the pretrial conference on June 8, 1951, the following provision was specifically included in the pretrial order:

"Defendant has submitted to plaintiff a report by Baker & Clauson, certified public accountants, of its financial operations up to and including March 31, 1951. Plaintiff is now studying the said report and desires either personally or through his accountant to examine the books of the defendant. Defendant agrees that this may be done at its office at a time to be mutually agreed upon. Plaintiff reserves the right thereafter to take such pretrial discovery as he may deem advisable in the light of his study of the aforesaid report of the accountants and his examination of the books of the defendant."

In addition the pretrial order fixed October 2, 1951, as the date for trial and specified that counsel should file trial memoranda by September 23, 1951.

On the date fixed for trial the plaintiff appeared without counsel and requested an adjournment. The transcript of the proceedings at that time reveal the following pertinent facts: (1) The plaintiff had made no effort either personally or through his accountant to examine the books of the defendant as provided in the pretrial order. This neglect can in no way be attributed to the withdrawal of counsel. Even if plaintiff's counsel had not withdrawn he quite obviously could not have been prepared to try the case on the date fixed. (2) The plaintiff knew at least the week before that his counsel had withdrawn, for the court stated that counsel had informed him of that fact the previous week and also that the case had been forwarded to him by another attorney. (3) Plaintiff's other attorney was Frank Balletta of the New York bar, "with an associate in Newark," according to the plaintiff's statement to the court. (4) The court in

granting the plaintiff an adjournment until October 23, 1951, on condition that he reimburse the defendant for its loss occasioned thereby, made it quite clear to the plaintiff that he must be ready to proceed with the trial on October 23, the adjourned date. This is revealed by the colloquy between the court and the plaintiff:

"Now Mr. Allegro asks for an adjournment.

Mr. Allegro, I want to give every litigant his day in court, but this is your day in court. Now you are simply impeding the business of the court and I am not inclined to grant any adjournment except on terms, and the terms would be that you would pay the expenses of the other side, entailed in getting ready for the hearing here today. * * *

Mr. Allegro: I will be glad to pay their expenses. On my paying of the expenses, would you give me sufficient times, two weeks, and then I would be prepared.

The Court: I will continue this to Tuesday, October 23rd, upon the following conditions: * * *

That sum of $200. shall be paid to the defendant's attorney, Mr. Belfatto, on or before October 11th. If it is not paid by then, that is evidence of the plaintiff's intention to abandon his case, his complaint, but in any event, the matter will be continued until October 23rd, at which time the defendant will be free to proceed with its counterclaim.

You understand, Mr. Allegro.

Mr. Allegro: Yes, sir.

The Court: In other words, you can have your day in court. You have put the defendants to unintentional expenses and you must meet those expenses. You have nine days within which to make that payment of $200. If it is not paid at that time, Mr. Bellfatto then has a right to assume that you don't intend to go ahead with your complaint on the adjourned date.

Mr. Allegro: I can pay that now.

The Court: Then the defendant is free to proceed, and would be free in any event, to proceed against you on the counterclaim on October 23rd.

You should get yourself an attorney, a new attorney, and tell him that it will be necessary for him to file a trial memorandum here before October 15th."

On October 23, 1951, Mr. Irving Mandelbaum appeared on behalf of the plaintiff and applied for a further adjournment. In support thereof the following representations were made to the court: (1) Mr. Mandelbaum was appearing on behalf

164

of Mr. George Kesselhaut who had not been retained by the plaintiff until October 20, 1951, and that Mr. Kesselhaut had not had time to prepare the case and was presently engaged in the trial of a case in the United States District Court which was expected to last for four to six weeks. (2) Since October 2, 1951, the plaintiff had endeavored to get in touch with Mr. Sylvester Allegro, a material witness, who had been in California and did not return until October 10, 1951. (3) On Mr. Sylvester Allegro's return he and the plaintiff had endeavored to see Mr. Kesselhaut who was in West Virginia for six or seven days and did not return until October 20, 1951, at which time he was retained by the plaintiff. (4) Immediately upon being retained Mr. Kesselhaut had communicated with the defendant's counsel and requested an adjournment which the latter stated he could not agree to, but that he must insist on proceeding on October 23, 1951.

The trial court indicated that it did not consider these reasons sufficient to warrant a further adjournment, stating:

"I think that Mr. Allegro got all the consideration he was entitled to when he was granted the adjournment the last time—when the Court lost time and the other side was put to great inconvenience. He was given three further weeks to prepare for today, and it was emphasized to him that the trial would go on today. He has had ample time to get another attorney. It may be that he has not used good judgment in taking the steps to get ready for trial today, but that is his misfortune. He has been under no misapprehension. It was made very clear to him three weeks ago that this case would go on for trial today and that he should move at once to get an attorney. And that means an attorney who would be available to try this case today. This Court cannot arrange its time to fit the convenience of any one litigant."

In view of the court's position, Mr. Mandelbaum requested that he be permitted to put the plaintiff and his witness, Mr. Sylvester Allegro, who incidentally was a member of the New York bar, on the stand for the purpose of showing what steps they had taken to retain counsel since the first adjournment had been granted. This request was denied by the court and it ordered that the trial proceed. On the plaintiff's refusal to proceed the court ordered the complaint dismissed

and permitted the defendant to present proof on its counter-claim.

In determining the propriety of the trial court's action it must be remembered that the court was well aware of two very significant facts. First, the plaintiff had as yet made no effort to make the examination of the defendant's books in order to ascertain the facts necessary for his proceeding with the trial of his case, although he had had months in which to do so. Second, Mr. Sylvester Allegro, although a member of the New York bar, was not the plaintiff's New York attorney to which the plaintiff had referred at the time of the request for the adjournment on October 2, 1951. Plaintiff's New York attorney was Mr. Frank Balletta who the plaintiff himself had stated was associated with New Jersey counsel. It was never even represented that Mr. Balletta had made any effort to secure his New Jersey associate or any other New Jersey counsel to represent the plaintiff. Mr. Sylvester Allegro, while a member of the New York bar, apparently was not a practicing attorney representing the plaintiff. He was in the construction business and a party to the contract which the plaintiff had with the defendant on which the plaintiff's action was predicated. In that contract Sylvester Allegro was hired by the defendant as "superintendent of building" at a salary of $300 per week and the plaintiff as "assistant superintendent of building and construction office manager" at a salary of $100 per week plus a percentage of any profits. The court was quite aware of the fact, therefore, that Sylvester Allegro was in the case merely as a witness for the plaintiff and not as attorney for him. Obviously the court could not permit the plaintiff to shift the responsibility for the failure to retain counsel in time to proceed on the date fixed to a witness in the case. Knowing from the plaintiff's own lips that his New York attorney in the case was in fact Frank Balletta, the court was not taken in by the representation that Sylvester Allegro was the New York attorney representing the plaintiff. The court quite understandably did not permit the plaintiff to shield his own failure by attributing it to another.

In view of all the circumstances of this case which were fully known by the trial court at the time, it can hardly be said that the trial court abused its discretion in denying a second adjournment. At the time the adjournment from October 2, 1951, to October 23, 1951, was granted by the court the plaintiff was informed in no uncertain terms that he must retain counsel and be prepared to proceed on the adjourned date. The plaintiff's failure to secure by an examination of the defendant's books the facts necessary for the prosecution of his case and his failure to take prompt steps to secure New Jersey counsel able to prepare his trial brief and try his case on the date fixed indicate a light regard on his part not only for his own case but also for the orderly conduct of the business of the courts. A litigant should not be allowed to conduct himself in such a manner and then complain that the court has acted precipitously in holding him to the consequences of his own default.

I am therefore of the opinion not only that the trial court did not abuse its discretion in denying to the plaintiff a further adjournment and requiring him to proceed on the date fixed, but that the court took the action that was clearly dictated by the circumstances and followed the only course consistent with the orderly administration of justice. If the courts are to perform their function of affording a tribunal for the prompt adjudication of disputes, litigants and lawyers cannot be permitted to ignore their responsibility of being prepared to proceed with the trial of their cases at the times fixed by the court, in the absence of sickness or other obvious grounds of postponement. The business of the courts cannot be conducted at the public expense on the haphazard basis that the plaintiff desires.

I would affirm the judgment under review.

*For reversal*—Justices HEHER, OLIPHANT, WACHENFELD and BURLING—4.

*For affirmance*—Chief Justice VANDERBILT—1.