201 N.J. Super. 410 (1985)
493 A.2d 540
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
LAWRENCE AUDETTE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 22, 1985.
Decided May 3, 1985.
*411 Before Judges KING, DEIGHAN and BILDER.
Frank J. Hoerst, Salem County Prosecutor, argued the cause for appellant (Susan Markowitz, Assistant Prosecutor, on the brief).
Bruce Sherman argued the cause for respondent (Waters & Sherman, attorneys; Ann L. O'Connor, on the letter brief).
The opinion of the court was delivered by KING, P.J.A.D.
In this case we granted leave to appeal, R. 2:2-4, from the order of the Law Division granting defendant's motion to suppress as evidence one-half pound of cocaine seized from defendant during a warrantless search allegedly in violation of *412 his State and federal constitutional rights. We disagree with the decision of the judge and conclude that in the circumstance his ruling was a mistaken exercise of discretion. We reverse and order that the motion to suppress pursuant to R. 3:5-7 be heard on the merits.
Defendant was stopped and his vehicle searched on March 23, 1984 on Route 40 in Carney's Point, Salem County. During the warrantless search slightly more than one-half pound of cocaine was seized from him. He apparently was en route from Florida to some unspecified location in New Jersey. He was charged with and indicted for possession of cocaine with intent to distribute in violation of N.J.S.A. 24:21-19(a)(1). The motion to suppress first was scheduled for October 9. The judge overscheduled his list for that day, the matter was not reached, and the motion then was rescheduled for November 9. Under our practice, defendant was entitled to an evidentiary hearing on the return day of the motion if material facts were disputed. R. 3:5-7(c).
The State's key witness was the arresting trooper. His testimony was required to sustain the State's burden of proof that the warrantless search was reasonable. State v. Valencia, 93 N.J. 126, 133 (1983). The State failed to notify him in time concerning the adjourned date of November 9 and he went on a scheduled vacation to a remote area in Maine where he could not be reached by telephone and told to return for the hearing. There is no doubt the State erred in not giving timely notice and a subpoena to the Trooper or in not arranging another date when he could be available to testify.
Defendant pressed for the suppression motion to proceed on November 9, claiming that he had been greatly inconvenienced because he had to come from Florida for that hearing. Apparently the Trooper's unavailability was not made known to defendant's lawyer in time to avoid defendant's trip from Florida by way of Boston where he went first to visit his *413 parents and then borrowed their car to drive to Salem for the November 9 hearing.
At that hearing, the State moved for a postponement, its first such application.[1] Defense counsel offered to let defendant *414 testify as to his version of the search and seizure if the court desired. The judge refused to hear defendant's version without first hearing the State's version. The judge said "I can either at this juncture grant your motion to suppress the evidence because the State failed to establish their burden of proof simply because there was no witness here or I can continue the matter on terms and order them to pay your client his expenses." The judge then undertook "to weigh the equities on both sides." He concluded that "the equities weighed more in favor of the defendant than ... in favor of the State" and granted the motion to suppress in default of any available proofs from the State.
We conclude that the better course would have been to grant the State's motion for postponement, its first motion in that regard. The judge could have sanctioned the State for the demonstrable expenses defendant bore to attend the aborted hearing of November 9. See R. 1:2-4(a) (payment of costs to adverse party as a condition of adjournment); Kohns Bakery, Inc. v. Terraciano, 147 N.J. Super. 582, 584-585 (App.Div. 1977). Such a sanction of out-of-pocket costs and expenses, if imposed by the judge, would have been sufficient in the circumstance. This was the State's first dereliction in the proceeding and there is no doubt the defendant's inconvenience was caused by mere carelessness on the prosecutor's part, not by any malicious design. In any busy law office, an occasional slip will occur. The first postponement was caused because the court *415 overscheduled, not because the prosecutor blundered. The extreme remedy of granting the motion to suppress, a remedy tantamount to dismissal of the indictment, was too severe and disproportionate to the circumstance. As we observed in State v. Porro, 175 N.J. Super. 49, 52 (App.Div. 1980), in reversing an order of the Law Division dismissing the indictment on the ground of prosecutorial misconduct,
But dismissing the indictment does not correct the error; it serves only to deprive the State of an opportunity to try the issues raised by the indictment. Dismissal does more than redress the wrong done to defendant; it effectively grants him immunity from prosecution. If the assignment judge was of the view that the prosecutor's conduct was so egregious as to call for disciplinary action, he might have referred the matter to the District Ethics Committee or the Administrative Director of the Courts. See R. 1:20. Dismissal of the indictment was too drastic a remedy; suppression of the improperly elicited testimony would have been a sufficient and more appropriate remedy.
As Judge Pressler has noted "the developing rule appears to be that the indictment will not be dismissed if the integrity of the criminal trial can be protected by alternative measures and lesser sanctions." Pressler Current New Jersey Court Rules, Comment R. 3:10-2, citing State v. Sugar, 84 N.J. 1 (1980). As this court stated some years ago, "no eagerness to expedite business, or to utilize fully the court's time, should be permitted to interfere with our high duty of administering justice in the individual case." Pepe v. Urban, 11 N.J. Super. 385, 389 (App. Div. 1951); see Allegro v. Afton Village Corp., 9 N.J. 156, 161 (1952); Nadel v. Bergamo, 160 N.J. Super. 213, 218 (App.Div. 1978).
Reversed and remanded for conduct of a suppression hearing. The Law Division judge may impose sanctions on the State as a condition of the adjournment in effect granted by this opinion. The sanctions, if any, shall be sufficient to reimburse defendant for demonstrable costs and expenses attendant upon the aborted suppression hearing scheduled for November 9, 1984.
NOTES
[1] If permitted a postponement the State would have been prepared at a later date to prove these facts, based on the assistant prosecutor's representation.

If a hearing would have been held, the State would have relied on the following facts taken from Trooper Callen's police report.
On March 23, 1984 at 9:30 a.m., Trooper Callen, while on routine patrol, observed a 1980 blue Fiat operating at a speed of 59 miles per hour in a 50 mile per hour zone on U.S. # 40 in Carney's Point Township, Salem County, New Jersey. He directed the vehicle to stop, approached the vehicle and requested the driver's license and registration. The driver produced a Florida driver's license identifying himself as Lawrence A. Audette of Fort Meyers, Florida. Lawrence Audette (hereinafter referred to as defendant) stated he did not have a registration for the vehicle.
Trooper Callen inquired as to who owned the vehicle and defendant replied that he did not know who the owner was and he was driving the car from Florida from A.A.A.C.O.N. Transport Company. The driver appeared to be very nervous.
The driver produced the transport papers from the vehicle upon request by Trooper Callen. However, as defendant reached into a brown leather overnight case located on the right front floor of the vehicle, the trooper believed defendant was attempting to conceal what was in the bag. At that time the trooper requested defendant exit the vehicle and patted him down for safety purposes. In defendant's right front pocket, the trooper felt what he believed to be a container used to hold cocaine. The trooper asked what was in defendant's pocket and defendant stated nothing but money and he started to remove the money and change from his pockets. Among the change, the trooper observed several green capsules which he suspected to be amphetamines. When questioned about the capsules, defendant stated he had bought them on the streets in Florida to keep him awake during the ride. Defendant was then advised he was under arrest for possession of suspected amphetamines and was again patted down. At this time, a black container containing a white powder suspected to be cocaine was removed from defendant's pocket. Defendant was again advised he was under arrest and was placed in the State Police vehicle.
While in the State Police vehicle, defendant was advised of his rights and a Consent to Search Form was filled out and presented to him. Defendant read the Consent to Search Form and voluntarily signed the form.
Trooper Callen then made a search of the vehicle. In the brown leather bag on the front floor of the vehicle, Trooper Callen found a large clear plastic bag containing eight smaller plastic bags of white powder which he believed to be cocaine. Found on the floor in the rear seat area was a brown paper bag which contained a small plastic bag of suspected marijuana and a portable triple beam scale and a cocaine sifter.
At the State Police Station, defendant advised Trooper Callen that he had sold his vehicle for $5,100.00 and used the money to buy cocaine which he had hoped to turn into a profit.
The substances were submitted to the New Jersey State Police Laboratory at Hammonton, tested, and found to be positive for cocaine, a quantity in slight excess of one half pound.