818 A.2d 319

WALTER M. KOSMOWSKI, SR., ADMINISTRATOR AD PROSE-QUENDUM FOR THE HEIRS–AT–LAW OF DREW J. KOS-MOWSKI, DECEASED; WALTER M. KOSMOWSKI, SR., AD-MINISTRATOR OF THE ESTATE OF DREW J. KOSMOWSKI, DECEASED; WALTER M. KOSMOWSKI, SR., INDIVIDUALLY AND ELEANOR KOSMOWSKI, INDIVIDUALLY, PLAINTIFFS–APPELLANTS, v. ATLANTIC CITY MEDICAL CENTER; RON-ALD VALLORINI, D.O. AND SANDRA LEVINE, R.N., DEFEN-DANTS–RESPONDENTS, AND WILLIAM F. PFEIFER, III, M.D.; BRUCE EIDELSON, M.D.; ANDREW GLASS, M.D.; SCOTT STRENGER, M.D.; SYKES, M.D., JOHN DOES M.D. AND JANE DOES, M.D. (FICTITIOUS PHYSICIANS WHO

TREATED DECEDENT); MARY ANN JEFFRIE, R.N.; A.B. SACH R.N.; E. ROSENBATH, R.N.; BETH DOE, R.N.; JANE DOES R.N. AND JIM DOES, R.N. (FICTITIOUS NURSES WHO CARED FOR DECEDENT) JANE DOES AND JOHN DOES (FICTITIOUS EMPLOYEES OF DEFENDANT, ATLANTIC CITY MEDICAL CENTER), DEFENDANTS.

Argued January 21, 2003—Decided March 19, 2003.

*Richard J. Simon* argued the cause for appellants.

*Eric M. Wood* argued the cause for respondents Atlantic City Medical Center and Sandra Levine, R.N. (*Fox, Rothschild, O'Brien & Frankel,* attorneys).

*Paul. M. Schaaff, Jr.,* argued the cause for respondent Ronald Vallorini, D.O. (*Orlovsky, Moody, Schaaff & Gabrysiak,* attorneys; *Jill R. O'Keeffe,* on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

The sole issue raised in this medical malpractice—wrongful death case is whether the complaint should have been dismissed because of the unavailability of plaintiffs' medical expert. We

conclude that under the unique facts of this case, the trial court should reassess its discretionary ruling.

I.

The complaint in this action was filed on September 1, 1995. A second amended complaint alleges that Drew J. Kosmowski, now deceased, was admitted to defendant Atlantic City Medical Center and came · under the care of the individual defendants. That complaint alleges negligence in diagnosing and treating the decedent while a patient at defendant hospital on and after September 6, 1993. That complaint also alleges that Drew J. Kosmowski died as the result of defendants' negligence. All defendants deny negligence.

Discovery was conducted over a period of time. Dr. Aiden J. Doyle, a board certified neurosurgeon selected as plaintiffs' expert, was deposed on June 4, 1999. On September 9, 1999, the trial judge notified counsel that he had been assigned to "case manage and move to trial all professional malpractice cases in the Monmouth Vicinage." In that same letter, the trial judge advised the attorneys that the present case had been scheduled to be tried before him on July 10, 2000, thereby providing a nine-month advance notice. Finally, the judge informed the attorneys that "[t]his is a specially assigned preemptory trial date which will not be adjourned for any reason." A case management conference was conducted on September 10, 1999, at which the judge established dates for the completion of discovery, April 10, 2000 being the outer limit.

On January 21, 2000, Richard Simon, Esquire, counsel for plaintiffs, requested that the July 10, 2000, trial date be adjourned to September 2000 because the discovery schedule was running two months late. The trial judge denied the request in a letter dated January 27, 2000. That letter explained that the trial date of July 10, 2000, had "been set preemptorily and will not be canceled or carried for any reason. The next available trial date is in the year 2002 and there is no reason to carry this 6 year old

matter any longer." In response to the letter, plaintiffs' counsel wrote the trial judge a letter dated February 14, 2000, pressing his request to adjourn the trial, only this time stating an entirely different reason for the request which was to attend his "family's scheduled reunion, in Tennessee in July, 2000, to celebrate my maternal grandmother's 90th birthday." The judge responded in a reply letter dated February 22, 2000, again denying the requested adjournment. The judge stated: "It is my suggestion that you get someone else to try this case in July or explain in detail to your client why the case went off and why it is being delayed until December" because the next available date in the system was not until December 4, 2000. Plaintiffs' counsel was unable to arrange with his adversaries to try the case on December 4.

Eventually, the trial judge rescheduled the trial for February 5, 2001. In a letter dated April 17, 2000, counsel for plaintiffs informed the trial judge that "all counsel of record, as well as the plaintiffs have agreed to proceed with the trial in the within matter on February 5, 2001." On April 19, 2000, the trial judge notified all counsel that the trial had been rescheduled for February 5, 2001, at 11:30 a.m. On January 22, 2001, counsel for one of the defendants requested an adjournment because the attorney scheduled to try the case had left the firm representing that defendant. The trial judge denied that request in a letter dated January 26, 2001. After denying that request, the trial judge's chambers contacted all counsel to make certain everyone was ready for the impending February 5 trial. The Appellate Division in its unpublished opinion described what happened thereafter.

On February 2, 2001, plaintiffs' counsel spoke to his expert's spouse and learned that he was in Europe and the spouse was not aware of the exact date he was scheduled to return home. Prior to going to court on February 5, 2001, plaintiffs' counsel spoke to his expert by telephone and learned that the doctor had returned from Europe and was in Baltimore, Maryland. The doctor advised, however, that he was unavailable during the week of February 5, 2001, because he had commitments in North Carolina, at Duke University and in Philadelphia, at the University of Pennsylvania. The doctor told plaintiffs' counsel that he would be available during the latter part of the next week, February 12, 2001.

Plaintiffs' counsel appeared in court, with his adversaries, before [the trial judge] on February 5, 2001, after he had spoken with his expert. He sought an adjournment. He said the following:

The problem is, Judge, I found out on Friday that Dr. Doyle, the plaintiffs' expert, is in Europe. And is not going to be available for two weeks.

Plaintiffs' counsel never advised [the trial judge] of the conversation he had with his expert on the morning before appearing in court. Plaintiffs' counsel advised [the trial judge] that he could not proceed without an expert and plaintiffs' complaint was dismissed with prejudice.

On February 6, 2001, one of the defense attorneys had his secretary call plaintiffs' expert in connection with another case. The expert answered the telephone and said he had returned from Europe.

Subsequently, another hearing was held on March 8, 2001. When plaintiffs' counsel was asked by [the trial judge] whether counsel had told "the court [the expert] was unavailable because he was in Europe," counsel denied that he had made such a representation.

The trial judge did not reinstate the dismissed complaint following the rehearing.

The Appellate Division affirmed, finding no abuse of discretion primarily because counsel's lack of candor deprived the court of an opportunity to make arrangements to accommodate plaintiffs' expert. We granted plaintiffs' petition for certification. 174 *N.J.* 189, 803 *A.*2d 1161 (2002).

## II.

Plaintiffs argue that they were denied their day in court because the lower court dismissed their complaint when their attorney was not honest with the court regarding the availability of the expert. They argue that this was a procedural dismissal that resulted in the litigants being unfairly punished for the actions of their attorney. Plaintiffs also contend that New Jersey law recognizes that a dismissal with prejudice is a drastic remedy that should be used only when no less drastic measure would sufficiently eliminate the prejudice to other parties or when the litigant, and not the attorney, is at fault. Ironically, plaintiffs' counsel who precipitated the dismissal now concedes that he "was not frank: he implied to the court that the expert was unavailable in Europe

when the expert was actually unavailable in Baltimore on the day of trial."

## A.

Preliminarily, we observe that although our Best Practices Rules became effective September 5, 2000, *R.* 1:1–2[5], the complaint in this case was dismissed on February 5, 2001, when plaintiffs' expert was unavailable for the first time. Plaintiffs' February 5, 2001, request for an adjournment due to the unavailability of Dr. Doyle was not proscribed by Best Practices. *See R.* 4:36–3(c). That said, "other . . . Best Practices rules [govern the progress of cases filed prior to September 5, 2000] and discretionary rulings should be [made] reasonably consistent with the provisions and purposes of Best Practices." Pressler, *Current N.J. Court Rules,* comment 4 on *R.* 4:5A–3 at 1322 (2003).

## B.

Next, we address what factors the trial court should have considered when exercising its discretion in determining whether to adjourn the case due to the unavailability of plaintiffs' expert. Clearly, the court must focus on the tension between, on the one hand, "the salutary principle that the sins of the advocate should not be visited on the blameless litigant," *Aujero v. Cirelli,* 110 *N.J.* 566, 573, 542 *A.*2d 465 (1988), and, on the other, "the court's strong interest that management of litigation, if it is to be effective, must lie ultimately with the trial court and not counsel trying the case." *Rabboh v. Lamattina,* 312 *N.J.Super.* 487, 492, 712 *A.*2d 240 (App.Div.1998). This was not the ordinary case in the sense that it was plaintiffs' counsel's inaccurate representation to the trial court with respect to the whereabouts of the expert that prompted the dismissal. At the post-dismissal hearing on March 8, 2001, the trial judge made it clear that had counsel been more complete in his conversations with the court, sanctions would have been imposed against the attorney but the trial would have been conducted in a way to accommodate the expert. Thus, we are faced with

a dismissal with prejudice after the statute of limitations has expired "when the [plaintiffs] are blameless and have relied on the presumed competence and good faith of their attorney[ ]." *Jansson v. Fairleigh Dickinson Univ.*, 198 *N.J.Super.* 190, 194, 486 *A.*2d 920 (App.Div.1985).

 We agree with plaintiffs that they have been denied their day in court based exclusively on the conduct of their attorney. When an attorney is unable to try a case due to the first unavailability of an expert, dismissal of the complaint with prejudice "is drastic punishment and should not be invoked except in those cases where the actions of the party show a deliberate and contumacious disregard of the court's authority." *Allegro v. Afton Village Corp.*, 9 *N.J.* 156, 160–61, 87 *A.*2d 430 (1952). Although the request for an adjournment is addressed to the trial judge's discretion, the ultimate sanction of dismissal with prejudice should be imposed "only sparingly." *Zaccardi v. Becker*, 88 *N.J.* 245, 253, 440 *A.*2d 1329 (1982). Because "dismissal with prejudice is the ultimate sanction [when an expert is unavailable for the first time], it will normally be ordered only when no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party." *Ibid.* (citations omitted). The same principles were reaffirmed in *Abtrax Pharmaceuticals, Inc. v. Elkins–Sinn, Inc.*, 139 *N.J.* 499, 512–17, 655 *A.*2d 1368 (1995).

Understandably, the trial judge was upset with plaintiffs' counsel for his lack of candor. But the judge's reaction to that lack of candor changed with the passage of time. On March 8, 2001, the judge indicated that he would not have dismissed the case if he had been informed by plaintiffs' counsel on February 5 that his expert was unavailable because he was in North Carolina or Pennsylvania. The judge stated,

> 'I would have adjourned the case for a day [and] ordered you to pay [all expenses to go] down there and videotap[e] him ... [or] in the alternative, I would have said to Judge O'Hagan, go ahead and try the case. [Move] it around for a couple of days so that Mr. Simon can get his expert here on Monday, because the case [requires] more than one week" to try.

In addition, the judge wrote a letter to plaintiffs' counsel on March 9, 2001, expressing some forgiveness. The judge then

stated that "no useful purpose would be served by initiating any further proceedings" against the attorney because the judge believed the attorney "to be a conscientious, bright professional with good intentions." The judge concluded the letter by stating that "in the future, if a problem arises please address it directly.... I consider this matter at an end and look forward to having future matters with you."

In view of the foregoing statements by the trial judge, we sense a desire on his part to reconsider this matter. We are not at all confident that he would have dismissed the case with prejudice if plaintiffs' counsel had been candid. We conclude, therefore, that the trial judge should reassess his discretionary ruling.

We, therefore, remand this matter to the trial court. On the remand, the court should consider whether restoration of the complaint would cause any prejudice to defendants caused by the delay since February 5, 2001. If the complaint is restored, then the court should consider the range of sanctions to be imposed on plaintiffs' counsel. *See Rabboh, supra,* 312 *N.J.Super.* at 493, 712 *A.*2d 240.

### III.

The judgment of the Appellate Division is modified and the matter is remanded to the Law Division.

LaVECCHIA, J., concurring.

I concur in Justice Coleman's opinion for the Court. I write only to add the following.

As adopted in New Jersey, Rule of Professional Conduct (RPC) 3.3 imposes on attorneys a "stringent" burden of disclosure. *In re Forrest,* 158 *N.J.* 428, 434, 730 *A.*2d 340 (1999); *see also Kernan v. One Washington Park,* 154 *N.J.* 437, 464, 713 *A.*2d 411 (1998) (Pollock, J., concurring)(observing that "in New Jersey, RPC 3.3

exceeds the requirements of disclosure imposed by the ABA version"). RPC 3.3(a)(5) requires that a lawyer shall not knowingly "fail to disclose to the tribunal a material fact with knowledge that the tribunal may tend to be misled by such failure." The duty to disclose material facts applies with equal force to matters relating to the substance of the underlying claim as well as to those that relate to procedural issues affecting management of the case. As the original comment to subparagraph (a)(5) stated,

subparagraph (a)(5) has been added, which provides that attorneys shall not fail to disclose material facts that are likely to mislead the tribunal if counsel were to remain silent. This applies both to facts that are at issue in the case as well as facts relating to the management of the case.

Thus, this Court has held that failure to disclose facts relating to the procedural handling of an action can merit ethical sanctions. In both *In re Norton*, 128 *N.J.* 520, 608 *A.*2d 328 (1992), and *In re Whitmore*, 117 *N.J.* 472, 569 *A.*2d 252 (1990), for example, violations of RPC 3.3(a)(5) were found when municipal prosecutors did not inform the trial court that the police officers in their respective cases had improper motives for not appearing to testify against DWI defendants, resulting in improper dismissal of the charges. Furthermore, in *Kernan, supra,* 154 *N.J.* at 459, 713 *A.*2d 411, Justice Pollock, in a concurring opinion, noted that an attorney's silence in respect of his defendant client's bankruptcy constituted a violation of the duty of disclosure required by RPC 3.3 because the attorney's failure to disclose tended to mislead the adversary and the court.

A misrepresentation to a tribunal "is a most serious breach of ethics because it affects directly the administration of justice." *In re Johnson*, 102 *N.J.* 504, 510, 509 *A.*2d 171 (1986). Although the trial court in this matter has chosen not to pursue disciplinary charges in connection with the attorney's conduct, it clearly should be understood that a referral to disciplinary authorities is within the panoply of tools available to a trial court that is misled by an attorney's misrepresentation or nondisclosure in connection with management of a case. As a general matter, the attorney, not the client, should bear the brunt of a sanction for unethical conduct.

See *In re Forrest, supra,* 158 *N.J.* at 437, 730 *A.*2d 340 (observing that purpose of Rules of Professional Conduct is to "protect the public from an attorney who does not meet the high standards of professional responsibility").

*For modification and remandment*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—6. Justice LONG did not participate.

*Opposed*—None.