# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2587-16T2

W.A.D.,

     Plaintiff-Respondent,

v.

R.M.C.,[1]

     Defendant-Appellant.

_____

Argued September 18, 2018 – Decided October 5, 2018

Before Judges Yannotti, Rothstadt and Gilson.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-4283-15.

Angela M. Scafuri argued the cause for appellant (Wilentz, Goldman & Spitzer, PA, attorneys; Angela M. Scafuri, on the briefs).

Theresa A. Lyons argued the cause for respondent (Lyons & Associates, PC, attorneys; Theresa A. Lyons, Chris A. Wright and Joanna R. Adu, on the brief).

---

[1] We use initials to identify the parties and others involved in this dispute in order to protect their identities.

PER CURIAM

Defendant appeals from the trial court's order dated November 18, 2016, which declared plaintiff the psychological parent of the minor child G.M., and ordered that the parties would share joint legal custody, with plaintiff designated the parent of primary residence (PPR). Defendant also appeals from an order dated January 12, 2017, which denied her motion for reconsideration.

I.

The parties met in 2009 when defendant, a licensed practical nurse, was taking care of plaintiff's mother at a nursing facility. They became friends and soon began what defendant describes as an intimate personal relationship. In the fall of 2009, defendant moved into plaintiff's single-family home in West Orange. In the spring of 2011, because of certain difficulties in their relationship, defendant moved into a separate apartment in Clark, although the parties remained in contact. One of the reasons for the parties' difficulties was their differing attitudes towards children. Plaintiff was reluctant to have children because of her age and her career.

In July 2011, defendant completed a training program so that she could become licensed by the Division of Child Protection and Permanency (Division) as a foster parent. G.M. was born on December 3, 2011. Later that month, the

2

Division contacted defendant and told her that the child could be placed with her immediately. The parties picked up the child at the hospital. Thereafter, defendant and G.M. moved into plaintiff's residence, which the Division had certified as a resource home. The parties agreed that G.M. would call plaintiff "Mamma" and defendant "Mommy."

In 2013, the parties learned that G.M. had a brother, and the Division asked the parties if they wanted to adopt G.M.'s brother so that the brothers would be together in the same home. Defendant wanted to adopt G.M.'s brother, but plaintiff did not. This disagreement led to a deterioration in the parties' relationship. Eventually, G.M.'s brother was adopted by his resource parents.

It appears that the parties both intended to adopt G.M., but they were concerned the adoption could be delayed because they were a same-sex couple. In order to expedite the matter, the parties agreed that the adoption would proceed in defendant's name only, with plaintiff's name added later. Defendant adopted G.M. on November 22, 2013. At the time, defendant was living in plaintiff's home.

In 2014, the parties' relationship continued to deteriorate and plaintiff encouraged defendant to begin dating others. In June 2014, defendant began a

3

relationship with C.M.C. In August 2014, defendant moved out of plaintiff's home and moved in with C.M.C.

In June 2015, plaintiff commenced this action seeking joint legal and physical custody of G.M. Plaintiff also sought to have her name be placed on G.M.'s birth certificate as a parent, and to have G.M.'s last name hyphenated to reflect the surnames of both parents.[2] The Family Part entered an order which, among other things, scheduled the matter for a plenary hearing; temporarily granted defendant sole legal and residential custody; appointed Lucy Agostini as guardian ad litem for the child; appointed Dr. Sharon Ryan Montgomery to determine whether there was a psychological bond between plaintiff and G.M.; and directed plaintiff to deposit $40,000 in a fund to cover the costs of this litigation.

In July 2015, defendant married C.M.C. Plaintiff later amended her complaint to add a count seeking to be designated the PPR for the child. In

---

[2] In November 2015, plaintiff filed a separate complaint in Essex County to adopt G.M. That same month, C.M.C. filed a complaint in Union County to adopt the child. The court dismissed the complaint without prejudice and C.M.C. appealed. In an opinion also filed this date in A-1600-17, we affirm the dismissal of C.M.C.'s complaint.

February 2016, the court ordered plaintiff to deposit an additional $40,000 in the litigation fund.

Thereafter, Judge Craig R. Harris conducted a trial in the matter. On November 18, 2016, the judge filed a written opinion in which he concluded that plaintiff met the criteria in V.C. v. M.J.B., 163 N.J. 200, 223 (2000), and established she is a psychological parent of the child. The judge also found it would be in the child's best interests if the parties shared joint legal custody, with plaintiff designated as the PPR. In addition, the judge granted plaintiff's application to have her name placed on the child's birth certificate, and to have the child's last name reflect the surnames of both parents. The judge memorialized his findings of fact and conclusions of law in an order entered on the same date. On January 12, 2017, the judge denied defendant's motions for reconsideration and for a stay pending appeal. This appeal followed.

II.

On appeal, defendant argues that the trial court erred by allowing her attorney to withdraw from the case about three weeks before the scheduled trial date.

The record shows that on March 22, 2016, defendant's attorney filed a motion seeking leave to withdraw from the case because defendant owed her

firm more than $100,000 in attorney's fees. The court considered the motion on April 8, 2016, and placed its decision on the record. The court pointed out that defendant had signed a retainer agreement, which stated that counsel could ask the court for permission to withdraw if defendant did not pay the fees in a timely manner.

The court noted that it had scheduled the trial to begin in about three weeks, and this weighed against granting the application. The court stated, however, that the case already had been pending for about ten months, and cases of this sort ordinarily should be completed in ninety days. The court observed that the case was not complex, defendant had the opportunity to retain new counsel, and new counsel would have time to "get up to speed" in the case.

The court also observed that although defendant had paid a significant amount of her attorney's fees, she had sufficient income to pay "much more." The court further found that substantial, additional attorney's fees would be incurred to complete the case, and the likelihood defendant would pay those fees was "pretty minimal." Balancing all of these factors, the court decided counsel should be permitted to withdraw.

"An attorney who appears of record may withdraw from a case for justifiable and lawful cause, after giving proper notice and obtaining leave of

A-2587-16T2

court." Jacobs v. Pendel, 98 N.J. Super. 252, 255 (App. Div. 1967). The decision of whether to permit an attorney to withdraw is committed to the sound discretion of the court. Ibid. Withdrawal may be permitted if the client fails or refuses to pay his or her attorney's fees, after a reasonable demand for payment. Ibid.

In deciding whether to grant a motion to withdraw, the court should consider, among other relevant factors

> the terms of the written retainer agreement and whether either the attorney or the client has breached the terms of that agreement; the age of the action; the imminence of the scheduled trial; the complexity of the issues; the ability of the client timely to retain substituted counsel; the amount of fees already paid by the client to the attorney; the likelihood that the attorney will receive payment of any balance due under the retainer agreement if the matter is tried; the burden on the attorney if the withdrawal application is not granted; and the prejudice to the client or to any other party.
>
> [R. 5:3-5(e)(2).]

Here, the record shows that when defendant's attorney sought leave to withdraw, defendant owed counsel more than $100,000 in fees. The court found that defendant had sufficient funds to pay her attorney more than she paid, and that it was unlikely she would be able to pay the additional fees that would be

A-2587-16T2

incurred to complete the case. In addition, the court weighed all of the other relevant factors in determining whether to allow counsel to withdraw.

Although defendant argues that it was too close to the scheduled trial date to permit counsel to withdraw, it is undisputed that defendant was able to retain new counsel before the trial began. In addition, the trial judge indicated that he could only try the case on two days during any week. The trial commenced on May 10, 2016, and was not concluded until September 23, 2016. Therefore, counsel had sufficient time to become familiar with the case. Furthermore, defendant has not shown that she was prejudiced by the court's determination. We conclude the court's decision to allow counsel to withdraw was not a mistaken exercise of discretion.

### III.

Next, defendant argues that the trial judge erred by denying her new attorney's application to adjourn the trial. As stated previously, on April 8, 2016, the court permitted defendant's attorney to withdraw from the case. The trial in the matter was then scheduled to begin on May 3, 2016. Defendant retained new counsel, and on April 15, 2016, counsel sought an adjournment of the trial. The court denied the application.

A-2587-16T2

We review a trial court's decision denying an application for an adjournment for abuse of discretion.  Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 573-74 (2003).  We will only reverse the court's determination when it "appears that an injustice has been done."  Rocco v. N.J. Transit Rail Operations, 330 N.J. Super. 320, 343-44 (App. Div. 2000).  In deciding whether to reverse the trial court's decision, we consider all relevant factors, including the length of the delay, whether similar requests had previously been made and granted, the inconvenience to other parties and the court, whether denying the application would result in prejudice to the party seeking the adjournment, and the complexity of the case.  State v. Hayes, 205 N.J. 522, 538 (2011).

The record shows that when defendant requested the adjournment, the case had already been on the court's calendar for about ten months, which was longer than usual for a case of this sort.  Moreover, the judge's schedule only permitted him to conduct the trial on two days during any week. The trial ultimately began on May 10, 2016 and did not conclude until September 23, 2016.  This afforded defendant's new attorney sufficient time in which to become familiar with the case.  In addition, defendant has not shown that she was prejudiced by the court's decision.  We therefore conclude that the denial of

defendant's application for an adjournment was not a mistaken exercise of discretion.

IV.

Defendant contends the trial court erred by ordering the parties to make equal contributions to the litigation fund to pay the additional expenses that would be incurred to complete the trial. We note that Rule 5:3-5(c) expressly authorizes the court to make a pendente lite allowance for "prospective services likely to be performed," taking into account "the respective financial circumstances of the parties."

As noted, after plaintiff filed her complaint, the court ordered the parties to establish a fund to pay the costs of this litigation, and plaintiff was required to deposit about $80,000 in the fund. Before the start of trial, the court anticipated that the expenses for the two expert witnesses would be $70,000, and directed both parties pay $35,000, in monthly installments of about $4000 a month, into the fund. After the trial began, the judge determined that the parties should continue to make those payments.

On appeal, defendant argues that the court erred by requiring her to contribute to the litigation fund. She notes the judge relied upon the case information statements (CISs) the parties had filed with the court, but asserts the

10

court's reliance upon the CISs resulted in "faulty financial accounting." She contends the court failed to recognize the income disparity between the parties, and that she was not working. She also argues the court erred by failing to conduct an ability-to-pay hearing.

Defendant's arguments lack sufficient merit to warrant extended discussion. R. 2:11-3(e)(1)(E). We note, however, that prior to trial, plaintiff had contributed $80,000 to the fund, and the court anticipated that additional expenses of $70,000 would be incurred before the matter was concluded. The court decided that the parties should share these additional expenses equally. In making that determination, the judge relied upon the CISs filed by the parties, which provided sufficient information for the court's decision. Therefore, the court was not required to conduct an ability-to-pay hearing.

V.

Defendant argues that the judge erred by finding plaintiff was the psychological parent of G.M. We disagree.

We note that the scope of our review of factual determinations of the Family Part is limited. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012). The trial court's findings of fact are binding on appeal when supported by adequate, substantial and credible evidence. Cesare v. Cesare, 154

N.J. 394, 411-12 (1998).  We must accord deference to the trial judge's factual findings when they are based on the judge's familiarity with the case, opportunity to make credibility judgments based on live testimony, and expertise in family matters.  F.M., 211 N.J. at 448.  We note, however, that, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"The right of parents to the care and custody of their children is not absolute." V.C., 163 N.J. at 218.  A third party may seek custody of another person's child in "exceptional circumstances."  Id. at 219.  The psychological parenting doctrine is based on the "recognition that children have a strong interest in maintaining the ties that connect them to adults who love and provide for them." Id. at 221.

To demonstrate the existence of a parent-like relationship with a child, a third party must establish:

> (1) that the biological or adoptive parent consented to, and fostered the petitioner's formation and establishment of a parent-like relationship with the child; (2) that the petitioner and the child lived together in the same household; (3) that the petitioner assumed the obligations of parenthood by taking significant responsibility for the child's care, education and development, including contributing towards the child's

support, without expectation of financial compensation [a petitioner's contribution to a child's support need not be monetary]; and (4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in nature.

[Id. at 223 (quoting In re Custody of H.S.H.-K, 533 N.W.2d 419, 421 (Wis. 1995)).]

Once the court has determined that the third party is a psychological parent to a child, "he or she stands in parity with the legal parent." Id. at 227. Custody and visitation issues are determined based on the best-interests-of-the-child standard, "giving weight to the factors set forth in N.J.S.A. 9:2-4." Id. at 227-28.

Here, Judge Harris held that plaintiff met the four-prong test under V.C. and established that she is a psychological parent to G.M. The judge found that plaintiff had presented overwhelming evidence showing that defendant had consented to and fostered the parental relationship between G.M. and plaintiff. In support of this finding, the judge relied upon the testimony of Dr. Montgomery and the guardian ad litem, which the judge found compelling.

The judge pointed out that with defendant's consent, G.M. referred to plaintiff as "Mamma" and had been doing so since he could speak. The judge pointed out that both parties were referred to as the child's foster parents in

13

various documents, and that defendant wanted to add plaintiff's name to the adoption. Furthermore, both parties' names appeared on holiday cards and birthday party invitations. The judge also rejected defendant's claim that plaintiff did not qualify as a psychological parent because plaintiff had not wanted children and was not involved in the decision to adopt.

The judge further found that G.M. had resided with plaintiff. The judge acknowledged that defendant had stayed at home for the first ten months after the child was adopted, and that initially plaintiff was not as actively involved in parenting G.M. as defendant because defendant had a medical background. The judge also observed that G.M.'s health care providers had recognized defendant as the child's only legal parent.

The judge found, however, that plaintiff became more actively involved in parenting the child when she was not working. She interacted regularly with personnel at the schools G.M. attended. In addition, school records referred to both parties as the child's "parents." The judge noted that even after defendant moved out of plaintiff's home, plaintiff continued to take G.M. to school and participate in school events.

The judge found that plaintiff took significant responsibility for the child's care, education, and development. The judge also found that plaintiff had

provided substantial financial contributions to support defendant and G.M., without any expectation of repayment, but the judge did not give inordinate weight to this evidence. The judge rejected defendant's contention that plaintiff's relationship with G.M. was merely that of a babysitter.

The judge further found that it was "undeniable that a parent-child bond has been formed" between G.M. and plaintiff. The judge noted that Dr. Montgomery had testified that G.M. would suffer psychological harm if his relationship with plaintiff was severed. Dr. Montgomery also had stated that G.M. viewed plaintiff as a parental figure. In addition, Elizabeth Smith, plaintiff's psychological expert, and the guardian ad litem for the child agreed that G.M. had a significant attachment to plaintiff.

On appeal, defendant concedes that G.M. developed a parental bond with plaintiff, and that she and plaintiff had lived together with the child. Defendant argues, however, that plaintiff failed to establish that defendant consented to the parent-child relationship. She claims she did not delegate any of her parental duties to plaintiff.

Defendant further argues that although plaintiff provided financial support for the child, this was not enough to satisfy the third prong under V.C. She claims plaintiff only took on a "playful caretaker role," and plaintiff's

A-2587-16T2

involvement with G.M.'s schooling was limited. Defendant also argues that the judge failed to give sufficient weight to the fact that plaintiff did not formalize her relationship with G.M. by filing for a separate adoption or becoming a foster parent.

We find no merit in these contentions. We are convinced there is sufficient credible evidence in the record to support the trial court's finding that plaintiff was a psychological parent to G.M. under the criteria established in V.C. Defendant's arguments to the contrary lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E). We affirm the determination that plaintiff is G.M.'s psychological parent substantially for the reasons stated by Judge Harris in his thorough and well-reasoned opinion.

## VI.

Defendant also argues that the judge erred by granting plaintiff joint legal custody and designating plaintiff as the PPR. Defendant maintains the judge erred by rejecting the guardian ad litem's recommendation that neither party be designated as the PPR. She contends the judge failed to give sufficient weight to her status as the adoptive parent.

As we stated previously, where, as here, a court has found that a third party is the psychological parent of a child, the court must consider the best

interests of the child in determining custody and related issues, giving weight to the factors in N.J.S.A. 9:2-4. V.C., 163 N.J. at 227-28. Therefore, in deciding custody, the court must consider the following:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes, the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

> [N.J.S.A. 9:2-4(c).]

Here, the judge considered these factors and found that defendant fell short in terms of her ability to cooperate with plaintiff regarding G.M. The judge noted that defendant had unilaterally removed G.M. from his school district, relocated to a different county, registered the child in a new school, and refused to disclose her new address to plaintiff without a court order. The judge also

17

noted that defendant had repeatedly failed to inform plaintiff about G.M.'s medical providers. In addition, defendant had sought to deny plaintiff parenting time during a holiday, publicly disparaged plaintiff on social media, and refused to allow G.M. to participate in a certain activity with plaintiff's family.

The judge noted that Dr. Smith had opined defendant did not have the ability to agree, communicate and cooperate. The judge found Dr. Smith's opinion to be "compelling." The judge pointed out that Dr. Smith stated that the degree of vitriol, especially on defendant's part, was affecting G.M., and had the potential to cause him to sustain "significant and lasting harm."

The judge stated that although the parties were willing to accept shared custody, it was "troubling" that defendant was resisting plaintiff's exercise of the parenting role, and that defendant had no intention of facilitating the exercise of parenting time going forward. The judge added that G.M. "clearly loves both parties," but his teachers reported that he requested plaintiff when he was upset. In addition, Dr. Smith concluded that defendant displayed a "dramatic failure in empathy" and was not able to separate G.M.'s need to maintain a relationship with plaintiff from her own needs.

The judge also noted that plaintiff had lived in the same residence for fifteen years, whereas defendant had lived in several different homes since she

began her relationship with C.M.C. The judge deemed this significant because G.M. is a special needs child and he requires "stability and continuity" in his education. The judge found that the applicable factors weighed in favor of having the parties share joint legal custody of the child. The judge also found that designating plaintiff as the PPR was in G.M.'s best interests.

On appeal, defendant argues that the factors in N.J.S.A. 9:4-2(c) weigh in her favor. She contends the trial judge ignored evidence that she and plaintiff could work together, and the evidence shows plaintiff has not taken any role in fostering a relationship between G.M. and his brother. She also contends the needs of the child weigh heavily in her favor because she is a nurse and plaintiff has been insufficiently involved in G.M.'s medical care. In addition, defendant asserts her home is more stable than plaintiff's home, and that the extent and quality of the time spent with the child prior to or after the parties' separation weighs in her favor. Defendant also contends the judge erred by failing to give substantial weight to the views of the guardian ad litem, who recommended that neither party be designated as the PPR.

We note that in child custody matters, the trial court's findings of fact and conclusions of law are entitled to great weight and will not be lightly disturbed on appeal. DeVita v. DeVita, 145 N.J. Super. 120, 123 (App. Div. 1976). Here,

19

there is sufficient credible evidence in the record to support the judge's findings of fact and conclusion that the parties should share legal custody of the child, with plaintiff designated as the PPR.

The evidence supports the judge's finding that the parties did not have the ability to communicate and cooperate in matters relating to the child, as shown by defendant's animosity towards plaintiff and the ongoing litigation between the parties. The evidence also shows that despite defendant's claim to the contrary, plaintiff was willing to foster a relationship between G.M. and his brother.

In addition, there is no evidence in the record that plaintiff was ever inattentive or uninvolved with G.M.'s behavioral issues or medical needs. The record also does not support defendant's claim that she has the more stable home. While defendant did spend more time with G.M. before the parties separated. The parties have spent roughly the same amount of time with G.M. since that time. Moreover, G.M. has expressed a preference for living with plaintiff.

Finally, although the guardian ad litem recommended that neither party be designated as the PPR, Dr. Smith offered a contrary opinion. She stated that plaintiff should be named the PPR. A fact-finder has the discretion to accept or reject an expert's testimony. Torres v. Schripps, Inc., 342 N.J. Super. 419, 430-

31 (App. Div. 2001). Moreover, a fact-finder can choose to adopt or reject all or part of an expert's testimony. City of Long Branch v. Liu, 203 N.J. 464, 491 (2010). Therefore, the trial judge was not compelled to accept the guardian ad litem's opinion. The judge provided sound reasons for accepting Dr. Smith's recommendation that plaintiff be designated the PPR for the child.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION