# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3188-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.D.,

     Defendant-Appellant,

and

A.M., SR.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.M., JR.,
a minor.

_____

Submitted March 8, 2021 – Decided April 5, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FG-16-0055-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Catherine Wilkes, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Emily K. Wanger, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant-mother S.D.[1] appeals from the Family Part's February 12, 2020 guardianship judgment that terminated her parental rights to her child A.M. Jr. (Alan).[2] On appeal, defendant argues that the trial judge erred in denying her request to proceed as a self-represented litigant and in denying her request for a two-week adjournment of the trial. Having considered defendant's contentions

---

[1] To protect privacy interests and for ease of reading, this court uses initials and pseudonyms for the parties and the children. R. 1:38-3(d)(12).

[2] The child's father, defendant A.M. Sr., voluntarily surrendered his parental rights to Alan on October 25, 2019. He has not appealed.

in light of the applicable principles of law, we discern no abuse of the trial judge's discretion and affirm.

We will not recite in detail the defendant's history with plaintiff the New Jersey Division of Child Protection and Permanency (Division), or the judge's findings as to the "best interests of the child" test set forth in N.J.S.A. 30:4C-15.1(a), because that determination is not challenged in this appeal. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge Imre Karaszegi, Jr.'s February 12, 2020 oral decision. We limit our factual recitation to that which is pertinent to defendant's appeal.

Defendant suffers from severe mental health issues, including Bipolar 1 Disorder, mixed severe psychotic features, borderline personality disorder, generalized anxiety, and post-traumatic stress disorder. She has an extensive history of psychiatric hospitalizations, substance abuse, and arrests, and she has been the victim of severe domestic violence at the hands of a number of male partners, including Alan's father.

Defendant gave birth to Alan in 2018. Alan was born addicted to opioids and had to undergo a period of withdrawal immediately after being born. Today, Alan is a special needs child who has been found to be delayed in his language

functioning and at risk of developing cognitive, emotional, and psychological issues. He is in the care of his resource family, which seeks to adopt him.

Prior to Alan's birth, defendant's two other, older children had been removed from her custody. Within weeks of his birth, the Division conducted an emergency removal of Alan based on its concerns about defendant's conduct that were raised by the child's pediatrician, defendant's psychiatrist and family members. According to the psychiatrist, defendant was in need of antipsychotic medication and mood stabilizers but had been refusing the medication for months. The psychiatrist also indicated that defendant had been hospitalized several times within the past year due to "mood instability[] and exhibiting paranoia and paranoid delusion."

On April 16, 2018, Judge Karaszegi ordered that Alan remain in the care and custody of the Division. After the judge later entered an order approving the Division's plan for termination of defendant's parental rights followed by adoption, on April 26, 2019, defendant was admitted to a hospital for psychiatric care and was involuntarily committed.

Although she was released on May 20, 2019, just prior to the Division filing its guardianship complaint, defendant was repeatedly hospitalized with psychiatric issues during the ensuing period leading up to the guardianship trial

in January 2020, never spending more than two or three consecutive weeks outside of the hospital. Her last hospitalization began on December 26, 2019, and she remained hospitalized through the conclusion of the trial.[3]

Issues about defendant being represented by counsel arose in June 2019. During a hearing in which defendant participated via telephone from a hospital, she responded to the judge's inquiry about her completion of the "5A form" used by the Office of the Public Defender to determine eligibility to assigned counsel by telling him she was not sure if she wanted an attorney. In response, the judge urged her to obtain assigned counsel because she needed to be represented. When she continued to balk, the judge explained that if she did not have an attorney, he would have to question her about her "ability to represent [her]self and the court may have to make a determination of . . . appointing an attorney to at least sit here in court with you to ensure that your rights are, in fact, protected."

After defendant was released from the hospital, in October 2019, the judge held a case management conference at which defendant failed to appear. At that time, the judge was informed that defendant's whereabouts were unknown, she

---

[3] Defendant's hospitalization during this time period was consistent with her history of psychiatric hospitalizations that dated back at least to 2012. Also, in 2017, she overdosed on illicit drugs.

A-3188-19

had not completed the "5A form," and had fired her provisionally-assigned counsel.

Almost two weeks later, defendant appeared at another conference.[4] Although she was represented by a different provisionally-assigned counsel, the assigned attorney advised the judge that defendant did not want counsel's assistance. In response to the judge's inquiry about the "5A form," defendant stated that she had "enough paperwork here that basically I'm carrying a luggage on my back. I'm homeless. I have nowhere to go. This is the only paperwork I have . . . so I can't carry any more paperwork than what I have." The Division also confirmed that defendant had not signed releases pursuant to a June 10, 2019 court order. After further discussions, it appeared that defendant was prepared to cooperate if she did not have to pay for an attorney. The judge accordingly requested that counsel pursue the waiver of any fees and ordered defendant's provisionally-assigned attorney to continue representation.

After defendant attended an unsuccessful mediation session on October 25, she again purported to fire her assigned counsel. She then failed to participate in a November 4 conference with the judge. At the time, the Division

---

[4] The hearing was held on October 23, 2019, and concerned the custody of defendant's youngest child. Defendant's assigned counsel at that hearing thereafter represented her in this action at trial.

A-3188-19

was unaware of defendant's location, and she had yet to complete a "5A form." The judge and counsel unsuccessfully attempted to reach defendant by phone at the numbers she had left with them.

By the time of the next hearing on November 7, 2019, defendant had still not signed the form or any releases for her medical information. Moreover, although the judge attempted to arrange to have defendant participate from the hospital in which she was being treated at that time, defendant refused. The Division advised the judge that earlier defendant indicated she was considering surrendering her parental rights.

The judge held yet another case management conference on November 18, 2019, in which defendant participated by telephone, even though she was not hospitalized. She immediately requested the trial judge adjourn the case "until after February" so she could hire an attorney. At that time, the judge informed her that the case would not be adjourned. When the judge asked defendant whether she intended to surrender her parental rights to Alan, defendant responded that she had not yet decided and needed "more time to get a lawyer." Assigned counsel then asked for more time to review discovery prior to the commencement of a full trial if a full guardianship trial was to be held. The judge granted that request and postponed the trial to the end of January.

7

During that hearing, defendant interrupted the proceedings for various reasons, including to request that the judge "close th[e] hearing" so she could "go back to sleep" and to protest being represented by assigned counsel, exclaiming that counsel could not win the case or "get something fair" and that the judge was "holding [her] kids hostage for no reason." She also stated that she did not understand why the Division was involved. Defendant also referred to the judge and counsel as "clowns" and told the judge and counsel "[y]ou don't give a fuck about these kids." She also told the judge to remove himself from the case. Thereafter, on November 21, 2019, the judge entered an order appointing defendant's provisionally assigned counsel to represent her in a non-provisional capacity at trial over defendant's objections.

On January 15, 2020, defendant's attorney sent a letter to the court requesting an adjournment of the January 22 trial due to defendant's ongoing mental health treatment. The letter indicated that defendant would not be able to attend the trial as scheduled because she was involuntarily committed to a psychiatric hospital and was therefore not permitted to leave. The judge did not specifically address this letter prior to the beginning of trial.

The trial took place over three days in late January 2020. On the first day of trial, defendant's attorney reminded the judge about the letter seeking an

adjournment and reiterated her request, asking for a two-week postponement. She also advised the judge that defendant's hospital had contacted her the night before and told her defendant would not be able to participate in court proceedings the next day. She stated that the staff member told her it was "typical for the hospital staff to at least wait two weeks to . . . get patients acclimated to the hospital, give them their necessary treatment and prepare them for something as serious as a court appearance."

The Division and the Law Guardian objected to the request on the basis that there was no evidence or assurance that defendant would be able to participate in two weeks, given her extensive history of frequent hospitalization. The judge denied defendant's request and noted that he had previously made efforts to accommodate defendant's hospitalizations but expressed that unnecessary delay would serve to prejudice Alan, who "need[ed] permanency." He also noted that defendant's interests were adequately represented by her attorney. The trial then proceeded that day as scheduled without defendant's appearance by telephone.

On that first day of trial, the Division's expert in psychology testified as to his evaluations of defendant and his bonding evaluation with Alan's resource

9

family.[5]  For the reasons stated in his testimony, he concluded that defendant had "severe parenting deficits" and would be incapable of providing Alan "with a permanent safe and secure home" at that time "or in the foreseeable future, due to [her] long psychiatric history[ and] the frequency of non-compliance with medication."  As to the bonding evaluation, he found that Alan was securely attached to his resource family and would suffer serious harm if removed from their care, which defendant could not mitigate.  He confirmed that he could not conduct a bonding evaluation of defendant with Alan because defendant did not appear for the scheduled evaluation and speculated that she may have been hospitalized at the time.

The next day, counsel renewed her request for an adjournment, which the judge denied.  The judge then arranged for defendant to participate by telephone from her hospital.  Defendant remained on the line, although hospital staff evidently asked her on several occasions to hang up, and she listened as two Division caseworkers testified.  She was also allowed to speak off the record with her attorney.

---

[5]  The same expert had testified at the October 2019 hearing involving defendant's younger child.  During the earlier hearing, which defendant attended while represented by counsel, the expert testified about the same conclusions he testified to at the first day of trial in this matter.

On the last day of trial, counsel again asked for an adjournment, which the judge denied, and arrangements were again made for defendant to participate by telephone. At one point, defendant had to disconnect from the call due to a fire alarm going off at the hospital, but the judge paused the proceedings until defendant rejoined the call.

On that day, the Law Guardian's expert in psychology testified. She concluded from the records she reviewed that defendant was poorly suited to provide a "safe and appropriate" environment for Alan because of her frequent hospitalizations, her inconsistency in visiting him, her abnormal conduct during instances she visited, and her history of domestic violence with A.M., Sr. That expert also conducted a bonding evaluation and reached the same conclusion as the Division's expert, noting also that she could not conduct an evaluation of Alan with defendant because defendant "was not available."

At several points during the expert's testimony, a social worker who was with defendant at the hospital interrupted the proceedings. At one point, the social worker indicated that defendant would like the call to end because the testimony was "hurtful" and because she was not physically present at the trial. She again interrupted the testimony to inform the judge that defendant was crying and sought a pause in the proceedings to give defendant a chance to calm

11

down. Later, defendant interrupted to object to the expert's testimony, whereupon the judge instructed her to discuss her objections with her attorney at the end of the direct examination. Defendant responded by saying "I don't need an attorney to say every little thing for me . . . . I should have been allowed to go pro se." Defendant thereafter interrupted the testimony on a number of occasions to voice her disagreement with the expert's testimony.

Following the conclusion of direct examination and prior to cross-examination, the judge permitted defendant to consult with her attorney off the record. Shortly after cross-examination began, the social worker again interrupted to inform the judge that she was ending the call because defendant was becoming "very agitated and upset" and that she did not think participating in the trial was "helpful for her." The judge instructed defendant's attorney to proceed with cross-examination, and upon the conclusion of cross-examination, the judge once again called defendant so that she could participate telephonically during summation, which she did.

On February 12, 2020, Judge Karaszegi terminated defendant's parental rights to Alan and placed his reasons on the record. Defendant appeared telephonically and repeatedly interrupted the judge. In terminating defendant's parental rights to Alan, the judge found that the Division proved by clear and

12

convincing evidence all four prongs of the "best interests of the child" test.  The

judge entered the guardianship judgment the same day.  This appeal followed.

On appeal, defendant advances the following arguments:

POINT I

THE TRIAL COURT'S DENIAL OF [DEFENDANT'S] REQUEST TO REPRESENT HERSELF IS REVERSIBLE ERROR AND ERRONEOUS AS A MATTER OF LAW.

    A.   THE TRIAL COURT'S DENIAL OF [DEFENDANT'S] REQUEST TO REPRESENT HERSELF IS A STRUCTURAL ERROR THAT REQUIRES REVERSAL.

    B.   THE TRIAL COURT ERRED WHEN IT DENIED [DEFENDANT'S] REQUEST TO REPRESENT HERSELF WITHOUT THE PROCEDURAL DUE PROCESS REQUIRED BY LAW.

       1.   [DEFENDANT] INVOKED HER RIGHT TO REPRESENT HERSELF EARLY, ON THE RECORD, CLEARLY AND UNEQUIVOCALLY.

       2.   THE COURT FAILED TO ENGAGE IN THE REQUIRED COLLOQUY.

       3.   THE COURT'S ASSIGNMENT OF COUNSEL WAS AN ABUSE OF DISCRETION.

13

POINT II

THE TRIAL COURT'S DENIAL OF
[DEFENDANT'S] REQUEST TO ADJOURN THE
TRIAL FOR TWO WEEKS TO RECEIVE MENTAL
HEALTH TREATMENT WITHOUT THE DUE
PROCESS REQUIRED BY LAW WAS AN ABUSE
OF DISCRETION AND A VIOLATION OF HER
RIGHT TO MEANINGFUL PARTICIPATION IN
THE GUARDIANSHIP TRIAL.

A. THE COURT'S DENIAL OF
[DEFENDANT'S] REQUEST TO ADJOURN FOR
TWO WEEKS TO RECEIVE MENTAL HEALTH
TREATMENT WITHOUT APPLICATION OF THE
STANDARDS OF R. 4:36-3(b) WAS AN ABUSE OF
DISCRETION.

B. THE COURT'S DENIAL OF
[DEFENDANT'S] REQUEST FOR AN
ADJOURNMENT TO RECEIVE MENTAL HEALTH
TREATMENT WAS UNREASONABLE UNDER
THE CIRCUMSTANCES.

C. THE COURT'S DENIAL OF
[DEFENDANT'S] REQUEST FOR AN
ADJOURNMENT WAS PREJUDICIAL TO
[DEFENDANT] BECAUSE IT VIOLATED HER
RIGHT TO MEANINGFUL PARTICIPATION IN
THE PROCEEDINGS.

We are not persuaded by defendant's contentions.

We first address defendant's argument that she was entitled to proceed to

trial as a self-represented litigant. We review de novo a trial judge's denial of a

parent's right to represent herself in a guardianship action, giving "no deference

14

to the [judge']s legal determination as to the scope of the right." N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 152 (2018).

At the outset, we acknowledge, as defendant argues, a "competent" parent has a right to represent themselves in guardianship actions, or to proceed "with the assistance of standby counsel at the court's discretion." Id. at 148-49, 151; N.J.S.A. 30:4C-15.4; R. 1:21-1(a). However, that right is not without its limits.

Parental rights are fundamental, they are not absolute. Instead, they are balanced against the "State's parens patriae responsibility to protect the welfare of children." In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). When parental rights are at issue, "the child's need for permanency and stability emerges as a central factor" for a judge to consider. R.L.M., 236 N.J. at 146 (quoting K.H.O., 161 N.J. at 357); see also In re Guardianship of J.C., 129 N.J. 1, 26 (1992) ("Because . . . children have an essential and overriding interest in stability and permanency, it is inimical to their welfare that their legal status remain unresolved.").

For that reason, in determining whether to allow a parent to proceed without counsel, a judge must consider (1) the "judge's responsibility to reach an informed and fair determination of the child's best interests, and [(2)] the child's interest in permanency." R.L.M., 236 N.J. at 149; see also K.H.O., 161

N.J. at 357 (emphasizing that family judges should consider a child's need for permanency).

In addressing a parent's request to proceed without counsel, or with standby counsel, there are four considerations. R.L.M., 236 N.J. at 149-51. First, the parent must assert their right "in a timely manner." Id. at 149. Second, the parent must invoke their right of self-representation "clearly and unequivocally" on the record and their waiver must be made "knowingly, intelligently, and voluntarily." Ibid. Mere complaints about a lawyer will not suffice. See N.J. Div. of Child Prot. & Permanency v. A.O.J., 464 N.J. Super. 21, 48 (App. Div. 2020) (citing R.L.M., 236 N.J. at 149-50). Third, the judge may appoint standby counsel in their discretion, although they need not do so. R.L.M., 236 N.J. at 150. Fourth, if the parent "declines to follow the court's instructions, disrespects the court or any participant in the hearing, or refuses to take part in the proceedings," the judge may "take appropriate steps" to reach an outcome that is in the child's best interests. Id. at 151; see also N.J.S.A. 30:4C-15.1(a) (establishing that termination proceedings are to be determined on the grounds of what is in the child's best interests). "No decision by a parent to proceed unrepresented should be permitted to impede a just and expeditious outcome for the child." R.L.M., 236 N.J. at 151.

Paramount to a judge's consideration of a litigant's request to proceed without counsel in a termination of parental rights proceeding is the child's best interest. Also, a judge must be assured that the parent understands the seriousness and difficulty of appearing without counsel. Where a competent parent "clearly and unequivocally" requests to represent themselves, a judge "should engage in [an] abbreviated yet meaningful colloquy" in order to become "satisfied that the parent understands the nature of the termination of rights proceeding and the disadvantages of self-representation." Id. at 150 (quoting In re Adoption of J.E.V., 226 N.J. 90, 114 (2016)).

Where a judge who has been managing a case since its inception and has developed a "comprehensive familiarity" with a parent's idiosyncratic deficiencies, such as a "dysfunctional lifestyle and dire financial circumstances," which impact the litigant's ability to make a "knowing and intelligent waiver," permission to proceed without counsel should be denied. A.O.J., 464 N.J. Super. at 48. Moreover, a judge must do all that is necessary to prevent "an obstructive pro se party [from] imped[ing]—if not derail[ing] entirely—the progress of the case." R.L.M., 236 N.J. at 142.

Applying these guiding principles, we are convinced that the judge's decision comported with the requirement that there be a clear and unequivocal

request by defendant to proceed without counsel. While defendant refused to sign the "5A form," she once explained on the record that this was because she had too many papers from the court to carry, and she repeatedly vacillated between expressing that she did not want the attorney she had been provided, that she might hire private counsel but could not afford to do so, or that she might go without counsel if she had to pay for counsel's services. Such statements do not qualify as clear and unequivocal invocations of the right to self-representation.

We also conclude that even if defendant made a clear and unequivocal request to proceed without counsel, Judge Karaszegi correctly insisted that defendant proceed with her assigned attorney based on the judge's familiarity with defendant's unabated mental health issues that called into question her ability to make a "knowing and intelligent" waiver. In light of defendant's mental health issues and her history of being unable to conduct herself properly in the presence of the judge and the attorneys, there existed a genuine prospect that, if allowed to proceed without counsel, defendant would impede the process.

The judge's decision clearly protected Alan's need for permanency and defendant's rights as a litigant who suffered from severe mental health issues that led to her repeated involuntary commitment. See A.O.J., 464 N.J. Super. at

18

47-49 (finding the grant of a parent's request to represent herself violated her right to counsel where the trial judge had knowledge of the parent's lifestyle and financial circumstances which would have prevented her from retaining private counsel). We have no cause to disturb the guardianship judgment based upon Judge Karaszegi requiring defendant to proceed with counsel.

Next, we turn to the judge's repeated denial of defendant's adjournment requests. A request for adjournment of a trial rests firmly within the trial judge's discretion and shall not be disturbed absent an abuse of that discretion. Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003). We will find an abuse of discretion only "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)); Dolan v. Sea Transfer Corp., 398 N.J. Super. 313, 330 (App. Div. 2008).

We find defendant's contentions as to this issue to be without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E). Suffice it to say that each request made by defendant or her counsel on the eve of trial, and on each day of the proceeding, was unsupported by any indication as to when defendant would be able to come to the court to participate in person,

rather than by telephone as arranged by the judge. Defendant offered no date for the likely resumption of the trial, nor was there any assurance from any mental health provider that defendant would be ready to proceed at a later date if the trial were postponed per defendant's requests. The Division and the Law Guardian, relying on that fact, strenuously objected to an adjournment each time the request was made.

We also conclude that the judge's denial of the request was consistent with our state's view that even where a parent is successfully addressing the issues that prevent her from safely parenting, a child cannot wait for a parent to become fit. N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004). Delaying a child's right to permanency exposes the child to a continuously-increasing risk of emotional harm. N.J. Div. of Youth & Fam. Servs. v. B.R., 192 N.J. 301, 310 (2007); see also N.J. Div. of Youth & Fam. Servs. v. K.M., 136 N.J. 546, 558 (1994). That said, where the parent's problems prevent her from attending a proceeding in court, the judge must provide an opportunity for meaningful participation, but that participation need not be in-person, and can be telephonic, if the circumstances so demand. Div. of Youth & Fam. Servs. v. M.Y.J.P., 360 N.J. Super. 426, 468 (App. Div. 2003).

That is exactly what Judge Karaszegi did here, and there has been no showing that defendant's constitutional right to due process had been infringed or that she suffered any prejudice, especially when weighed against the potential harm to Alan if the matter was delayed indefinitely. See id. at 470-71 ("[T]hrough able counsel, [the parent] had 'an effective opportunity to defend by confronting . . . adverse witnesses and by presenting [her] own arguments and evidence orally' . . . after sufficient time to confer with counsel in meeting the Division's case against her." (third alteration in original) (quoting Goldberg v. Kelly, 397 U.S. 254, 267 (1970))). There was no abuse of the judge's discretion.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21