# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4778-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CALVIN L. SANCHIOUS, JR.,

     Defendant-Appellant.

_____

Submitted March 22, 2021 – Decided April 13, 2021

Before Judges Fasciale and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FO-18-0237-19.

Pasquale Marago, attorney for appellant.

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Lauren E. Bland, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from his conviction of disorderly persons contempt, N.J.S.A. 2C:29-9(b)(2), for violating a temporary restraining order (TRO) previously obtained by his roommate under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35.  We affirm.

Defendant and T.B. lived together in a home owned by T.B.  Defendant harassed and assaulted T.B., resulting in T.B. applying for a TRO.  On March 13, 2019, a TRO was entered against defendant.[1]  Later that day, defendant was charged with contempt of the TRO after he called T.B.'s cell phone twice and called out to him while standing on nearby property.

The final restraining order (FRO) trial was originally set for May 30, 2019 but was adjourned on defendant's requests to June 5 to give him time to obtain a transcript.  Judge Robert B. Reed conducted a bench trial.  He found defendant guilty of contempt, N.J.S.A. 2C:29-9(b)(2), and sentenced defendant to a thirty-day sentence of imprisonment, to be served on weekends.

On appeal, defendant raises the following points for this court's consideration, which we have renumbered:

---

[1] A final restraining order (FRO) was subsequently entered.

A-4778-18

POINT I

THE CASE AGAINST [DEFENDANT] SHOULD HAVE BEEN DISMISSED ON MAY 30, 2019 WHEN THE STATE WAS UNPREPARED TO BEGIN TRIAL.

POINT II

[DEFENDANT] WAS DENIED A FAIR TRIAL WHEN THE TRIAL OCCURRED ON JUNE 5, 2019 DESPITE [DEFENDANT'S] INABILITY TO OBTAIN THE RELATED TRO TRIAL TRANSCRIPT TO USE FOR IMPEACHMENT PURPOSES PRIOR TO THE START OF THE TRIAL.

POINT III

THE GUILTY VERDICT AGAINST [DEFENDANT] WAS AGAINST THE WEIGHT OF THE TRIAL EVIDENCE.

I.

We reject defendant's argument that the judge improperly adjourned the May 30 trial date and should have dismissed the charge against him. We defer to the trial judge in matters concerning adjournment requests and scheduling, State ex rel. Comm'r of Transp. v. Shalom Money St., LLC, 432 N.J. Super. 1, 7 (App. Div. 2013), and will review a judge's decision to grant or deny an adjournment request for abuse of discretion, Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 574 (2003). "Abuse of discretion only arises on demonstration of 'manifest error or injustice,'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting

State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the judge's "decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Defense counsel submitted his first adjournment request on May 24, 2019, six days before trial, because he had "just entered the case and only recently received discovery" and because "[defendant] believe[d] that a transcript of the FRO hearing related to [the] matter [was] indispensable to his defense." A judge denied the request. Defense counsel submitted a second adjournment request on May 29, 2019, the day before the original trial date, which stated:

> I will require some time to prepare my case with [defendant]. Otherwise, I ask the [judge's] permission to withdraw from the matter. I understand from Criminal Case Management that [defendant] indicated to the [c]ourt on or about May 16, 2019 that he would be hiring me but I had not yet had that conversation with defendant.

The State consented to both requests and requested a separate adjournment because the assistant prosecutor would be on vacation on the first scheduled trial date of May 30. The judge denied the requests without a statement of reasons.

At the May 30, 2019 status conference, the following colloquy occurred on the

record:

> THE COURT: Okay, so [defense counsel], I understand from my team leader that you wanted to get a copy of the transcript from the prior FRO hearing between the parties, is that correct?
>
> [DEFENSE COUNSEL]: Judge, at this point we abandoned that idea . . . [b]ecause we made some adjournment requests and they were both denied, and [the assistant prosecutor] made an adjournment request because she's on vacation this week, and that was denied, and we were told we had to be here for trial.
>
> THE COURT: By the [Presiding Judge].
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: So[,] we are prepared for trial. The victim's not here, so based on the fact that [defendant] was told he had to be here for trial and the victim's not here, we're going to have to request a dismissal at this point.
>
> THE STATE: The State finds that disingenuous since there was a defense request—I'm mistaken—two defense requests for adjournment on which the assistant prosecutor, who is presently on vacation, relied and joined in that request, consented to it, and now away.
>
> Had the witnesses been subpoenaed, I'd try the case right now, no problem. They haven't been because the defense requested an adjournment, having been new to the case as of last week.

A-4778-18

So the State not only opposes that request, but also would deem on the record it would be completely disingenuous in terms of making representation to the [c]ourt of needing an adjournment, the State consenting thereto, and then turning around immediately and asking for a dismissal.

. . . .

THE COURT: You're . . . new to the case, [defense counsel]. You filed an appearance when?

[DEFENSE COUNSEL]: I filed an appearance on the 24th.

THE COURT: Okay. For the record, it's obviously May 24th [today].

. . . .

THE COURT: And then you made two requests for adjournment of today's case, in light of your recent retention. And it's my understanding that you also wanted to obtain a copy of the transcript in the proceeding. And that was, I don't know if it was in writing, or if that was orally conveyed to my team leader, because that was communicated to me, the intention. And today, this afternoon you're saying, Judge, in light of the denial on my two adjournment requests, and being told I need to appear here for purposes of trial, I'm abandoning that request.

[DEFENSE COUNSEL]: That's correct.

. . . .

6

THE COURT: [F]or purposes of what we're going to do here today, yes, it's listed for trial. But, . . . and Judge Rahill, as I know, denied the two requests for an adjournment by the defense. I already had the person that's in charge of IT at the county . . . identify how long the transcript was, how much it would cost for the purposes of a deposit, and what it would cost to get it on an expedited basis, where there would be one to two days versus seven to [ten] days, in light of the fact that no fault of [defense counsel's], of course, he's only recently in the case, the case is [seventy-six] days old, as you know. That's a little on the older side for our FO cases which have a backlog of [ninety] days. They go past [ninety] days all the time, when it's necessary, okay?

But, in any event, at least from my perspective, . . . it would be necessary for you to be here to address in greater detail how you would intend to proceed forward, okay?

So I'm not going to grant your motion to dismiss for failure of the State to be prepared to go to trial, when I have the [assistant] prosecutor consenting to your adjournment request, but the [presiding judge] saying no, and further noting that you're coming in now and saying I'm going to waive my right to get that transcript. <u>I'm not holding you to that if I'm not going to trial today, and we're not granting your motion to dismiss, because if there is relevant information in there, I want to make sure that you get it and your client has a full and fair opportunity to defend on the merits of this case</u>.

[(Emphasis added).]

The judge then directed defense counsel to order the relevant FRO transcript on an expedited basis, which counsel agreed to do.

A-4778-18

Under these facts, the judge was well within his discretion to adjourn the trial. Defendant had recently retained defense counsel and counsel had not yet obtained the relevant FRO transcript. The judge allowed counsel time to review the matter and request the transcript, and even went so far as to ensure the transcript could be ordered in time for trial. Defendant was in no way prejudiced by the judge's action.

As to the defendant's argument that the judge should have dismissed the charge, the judge was also well within his discretion in denying that request. The State points out that to grant defendant's request on procedural grounds would have been "contrary to the intent of domestic violence legislation, which is to provide immediate relief and protection for victims of domestic abuse." Indeed, courts must give "broad application" to the Domestic Violence Act. See Cesare v. Cesare, 154 N.J. 394, 399 (1998). As such, the judge did not abuse his discretion.

## II.

We also reject defendant's argument that the verdict was against the weight of the evidence.[2]

---

[2] Defendant improperly uses the standard for jury trials, that is, whether the verdict is against the weight of the evidence. Defendant's trial was a bench trial.

A-4778-18

Our review of a finding of guilt in a contempt proceeding is limited to determining whether the record contains sufficient credible evidence to support the judge's findings. State v. Lamb, 218 N.J. 300, 313 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). The factual findings of the trial judge are generally accorded deference given the judge's "opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; [the judge] has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). Nevertheless, in evaluating a judge's findings in a criminal case, this court must ensure that the State has carried its burden of proving a defendant's guilt beyond a reasonable doubt.

To obtain a conviction of the disorderly persons offense of contempt for violating a TRO issued under the Act, the State must prove beyond a reasonable doubt that defendant knowingly violated such an order. N.J.S.A. 2C:29-9(b)(2); see also State v. Finamore, 338 N.J. Super. 130, 138 (App. Div. 2001). "[T]he evidence must allow at least a reasonable inference that a defendant charged with violating a [TRO] knew his conduct would bring about a prohibited result." State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012). N.J.S.A. 2C:2-2(b)(2)

states in relevant part: "[a] person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence."

After defendant received the TRO, defendant left the residence he shared with T.B. and walked across the street. Watching defendant on his phone from the residence, T.B. received two calls from defendant. Defendant proceeded to sit in a tree on property located near the driveway of the residence. Defendant called out T.B.'s name and remarked that he had "nowhere to go." Defendant stated that he realized he forgot his wallet, so he walked towards the house to talk to a neighbor and stood on the sidewalk while the neighbor went inside the residence to retrieve it. T.B. came outside and told the neighbor to call 9-1-1. Defendant left the abutting property and went to a nearby Quick Check where he was arrested for contempt.

At trial, defendant—who knew about the TRO and its requirement that he not contact T.B.—defended the charges by attempting to show that he was not on the property, but rather was on the sidewalk, and by denying that he spoke to T.B. when he returned to the property. Officer Vacchiano, the arresting officer, testified that he had personally gone over the terms of the TRO with defendant.

The judge noted that "clearly the [d]efendant, by his own admission, was served the order, and understood its terms. That's corroborated by the testimony of Officer Vacchiano[.]" The judge gave weight to eyewitness testimony and stated that "despite T.B.'s lack of corroboration . . . the testimony that [defendant] addressed [T.B.], and in that regard had oral contact with [T.B.]" meant that he violated the terms of the TRO.

After hearing testimony, the judge applied the correct law and found defendant guilty beyond a reasonable doubt due to his conduct in speaking to T.B.. The judge summarized by stating "[d]efendant is found guilty of contempt on the basis that this [c]ourt is firmly convinced that [d]efendant . . . had oral contact with the alleged victim. That is the sole and exclusive basis for the [c]ourt's finding." We conclude that there exists sufficient credible evidence in the record to support the judge's findings, which we will not disturb.

As to defendant's contention that he was denied a fair trial, we conclude that it is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                                    A-4778-18